John ADAMSON; Virginia Brennan; Louis Capriotti; Helen Capriotti; William Carter, Jr.; Jerry Cease; Merna Cease; John Coley; Annie Coley; Lawrence Dean; Tim Emery; Rudolph Gasser; Rosalie Gasser; William Houck; Sonia Houck; Frank Humphrey; Barbara Humphrey; Clayton Jackson; Cheryl Jackson; Robin Kilby; Lewis King; Kathleen King; Susan Kuehnle; June Litaker; Patricia Maday; William March; Elsie March; Michael Mays; Anne Marie Mays; Jack McReynolds; Dolly McReynolds; Jeffrey Meade; Rhonda Meade; Ray Madill; Richard Natonski; Barbara Natonski; Frans Rauhala; Erica Rauhala; Anthony Romano; Theresa Romano; William Scholz; Acie Shrewsbury; Mary Shrewsbury; David Stafford; Gail Stafford; William Stubbs; Barbara Stubbs; Monte Strait; Mary Strait; Thomas Thoma; Cindy Thomas; Albert Vanlanduyt; Linda Vanlanduyt; Cochise Wanzer; Wanda Wanzer; Paul Wireman; Milton Woodward; Cathy Woodward; Pauline Zvonkovich, On their own behalf and on behalf of all persons similarly situated, Plaintiffs–Appellants,

v.

ALLIANCE MORTGAGE COMPANY; American Savings Bank, FSB; American Security Corporation; Chevy Chase Savings Bank; Citicorp Mortgage, Inc.; City Consumer Services, Inc.; Continental Federal Savings Bank; The Dime Savings Bank of New York; Dominion Federal Savings & Loan Association; Fireman's Fund Mortgage Corporation; First Nationwide Bank; First Union Mortgage Corporation; First Virginia Bank; Fleet Mortgage Corporation; Fleet Real Estate Funding Corporation; Federicksburg Savings & Loan Association; Glenfed Mortgage Corporation; GMAC Mortgage Corporation of Pennsylvania; Goldome Realty Credit Corporation; ICM Mortgage Corporation; Lomas & Nettleton Company; Manufacturer's Hanover Consumer Services, Inc.; Metropolitan Life Insurance Company; Midland Mortgage Corporation of New York; NBD Mortgage Company of Virginia; New York Guardian Mortgagee Corporation; Philadelphia Savings Fund Society; Perpetual Savings Bank, FSB; Ryan Financial Services, Inc.; Ryland Mortgage Company; Signet Bank; Sovran Equity Mortgage Corporation; Sovran Mortgage Corporation; Standard Federal Savings & Loan Association; Talman Home Federal Savings & Loan Association; United Virginia Mortgage Corporation; Washington Federal Savings & Loan Association; Weaver Brothers, Inc., Defendants–Appellees,

and

Federal Home Loan Mortgage Corporation; Federal National Mortgage Association; GMAC Mortgage Corporation of Pennsylvania, Defendants.

No. 87–3664.

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1988.

Decided Sept. 19, 1988.

As Corrected on Denial of Rehearing
Oct. 21, 1988.

Victor Michael Glasberg (Jonathan M. Smith, Victor M. Glasberg & Associates, Alexandria, Va., Daniel H. Borinsky, Nageotte & Borinsky, Woodridge, Va., on brief), for plaintiffs-appellants.

Henry A. Hart, John P. Corrado (David G. Fiske, Hazel, Thomas, Fiske, Beckhorn & Hanes, P.C., Alexandria, Va., Hugh C. Cregger, Jr., Cregger & Cregger, McLean, Va., Dennis L. Veraldi, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., William L. Stauffer, Jr., Kurt Rommel, Frank, Bernstein, Conaway & Goldman, Falls Church, Va., James R. Dever, Mark J. Hardcastle, Hardcastle & Dever, Rockville, Md., Peter W. Tredick, Hogan & Hartson, Washington, D.C., Virginia W. Powell, Dewey B. Morris, Hunton & Williams, Richmond, Va., Eugene Propper, Martin J. Jaron, Jr., Lane & Edson, P.C., Washington, D.C., Anthony F. Troy, Robert D. Seabolt, Mays & Valentine, Richmond, Va., Stephen P. Murphy, McDermott, Will & Emery; Stephen R. Mysliwiec, Piper & Marbury, J. Gordon Forester, Jr., Gilbert E. DeLorme, Pohoryles & Greenstein, P.C., Michael A. Schlanger, Philip J. Harvey, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., Joel B. Harris, Thacher, Proffitt & Wood, New York City, Peter E. Kaplan, Weiner, McCaffrey, Brodsky & Kaplan, P.C., Robert E. Jensen, Williams & Jensen, Washington, D.C., on brief), for defendants-appellees.

Before WIDENER, MURNAGHAN and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

John Adamson and the purported class he represents[1] appeal the district court's dismissal of his action brought against numerous lending institutions located in the State of Virginia (the Lenders) under the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and RICO, 18 U.S.C. § 1962.[2] 677 F.Supp. 871 The plaintiffs are Virginia residents who financed purchases of homes with loans from the Lenders. In his complaint, Adamson alleged that, at the time the plaintiffs completed the payments due on their mortgages, the Lenders pursuant to established policies required payments of as much as $51 as a condition of releasing the plaintiffs' deeds of trust. The loan documents had imposed no obligation on the plaintiffs to pay the release fees, and the fact that release fees would be charged was not disclosed at the time the loans were made.

Adamson asserts that the dismissal was improper because the Lenders' failure to disclose their requirement for the future payment of the release fees supports a claim under the Truth in Lending Act. He also contests the dismissal of the RICO claims. He argues that the Lenders' charging of the fees and their failure to pay the plaintiffs the "forfeiture" fees imposed under Virginia law for failure promptly to release the deeds of trust[3]

---

1. Adamson's complaint lists 15 named plaintiffs for the truth in lending claims, who purport to represent a class. The district court dismissed the action without reaching the question whether to certify the class pursuant to Fed.R.Civ.P. 23(b).

2. Adamson's complaint also included causes of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(b) (RESPA). He does not raise the RESPA claims on appeal.

3. Section 55–66.3(A)(1) of the Virginia Code provides:

**Marginal release of deed of trust or other lien.—A.1.** When payment or satisfaction is made of a debt secured by mortgage, deed of trust, vendor's lien, or other lien, or when any one or more of the obligations representing at least twenty-five percent of the whole amount secured by any such lien, but less than the whole number of the obligations so secured, when the debt secured thereby is evidenced by two or more separate written obligations sufficiently described in the instrument creating the lien, have been fully paid, the lien creditor, unless he has delivered a proper release deed, shall, within ninety days after notice that the full or partial payment or satisfaction has been made, cause such payment to be recorded on a certificate of satisfaction or certificate of partial satisfaction in the clerk's office or be entered on the margin

constitutes a pattern of racketeering subject to 18 U.S.C. §§ 1961(1), 1962. Finding no merit in either of Adamson's contentions, we affirm.

## I

The Truth in Lending Act directs the Federal Reserve Board to promulgate regulations governing disclosure in credit transactions. 15 U.S.C. § 1604. Pursuant to this authority, the Board requires disclosure of the "finance charge" for each credit transaction. 12 C.F.R. § 226.18(d). The Act defines finance charge as:

Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit.

15 U.S.C. § 1605(a).

Regulations promulgated by the Federal Reserve Board define finance charge in more detail.

The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 226.4(a).[4]

Adamson argues that the release fees were incurred in connection with the loans and, therefore, that the Truth in Lending Act required they be disclosed. The fees which must be disclosed as finance charges, however, are only those charges "payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a). The release fees were not charged during the transaction in which credit was extended, but as an incident to the formal extinguishment of the Lenders' liens after the debts had been repaid. The loans were in no way conditioned on the plaintiffs agreeing to pay the release fees; the record reveals no evidence that the plaintiffs were ever under any legal obligation to pay the fees. Under these circumstances, we agree with the district court that the release fees were not im-

---

of the page of the book where such encumbrance is recorded. Any lien creditor who fails to cause such recordation or to mail or deliver to the appropriate clerk's office, the obligor or the obligor's designee an executed certificate of satisfaction and the note marked "paid" within the ninety-day period shall forfeit $300 to the lien obligor. Following the ninety-day period, if the amount forfeited is not paid within ten business days after demand for payment, the lien creditor shall pay any court costs and reasonable attorney's fees incurred by the obligor in collecting the forfeiture.

4. Subsection (b) of the regulation lists examples of the "types of charges" included in the finance charge:

(1) Interest, time price differential, and any amount payable under an add-on or discount system of additional charges.

(2) Service, transaction, activity, and carrying charges, including any charge imposed on a checking or other transaction account to the extent that the charge exceeds the charge for a similar account without a credit feature.

(3) Points, loan fees, assumption fees, finder's fees, and similar charges.

(4) Appraisal, investigation, and credit report fees.

(5) Premiums or other charges for any guarantee or insurance protecting the creditor against the consumer's default or other credit loss.

(6) Charges imposed on a creditor by another person for purchasing or accepting a consumer's obligation, if the consumer is required to pay the charges in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation.

(7) Premiums or other charges for credit life, accident, health, or loss-of-income insurance, written in connection with a credit transaction.

(8) Premiums or other charges for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property, written in connection with a credit transaction.

(9) Discounts for the purpose of inducing payment by a means other than the use of credit.

12 C.F.R. § 226.4(b).

posed "as an incident to the extension of credit."

## II

Since Adamson concedes that he cannot establish the distinction between the alleged RICO defendant and the alleged RICO enterprise required under Fourth Circuit precedent, *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190–91 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983), his appeal on this issue is meritless.

In view of our decision, it is unnecessary to decide the motion pending at the time of oral argument by appellees for summary affirmance.

The judgment of the district court is affirmed.

AFFIRMED.