Jonathan A. BLOOM, et al., Plaintiffs,

v.

Ray M. MARTIN, et al., Defendants.

No. C 94–0784 SBA.

United States District Court,
N.D. California.

July 22, 1994.

Wayne Lewis Lesser, Michael Mendelson, Kurt B. Kroger, Law Offices of Wayne Lewis Lesser, San Francisco, CA, for plaintiffs.

Kathleen V. Fisher, James F. McCabe, Morrison & Foerster, San Francisco, CA, for defendants Citicorp and Citibank Federal Sav. Bank.

Matthew L. Larrabee, A. Mari Mazour, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for all other defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

ARMSTRONG, District Judge.

Plaintiffs filed the instant class action against various mortgage lenders and individuals alleging that they have wrongfully

withheld disclosing certain real estate fees. The First Amended Complaint alleges claims under the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2601–2617, and various state law causes of action. The parties are presently before the Court on defendants' motion to dismiss.[1] After having read and considered the papers submitted, and being fully informed, the Court grants defendants' motions.[2]

## BACKGROUND

This purported class action lawsuit[3] concerns whether residential mortgage lenders must disclose to borrowers the existence of two statutorily-authorized fees. The first fee at issue is known as a "Demand Fee." The lender charges a Demand Fee for preparing a statement which indicates the borrower's outstanding loan balance in connection with the early payoff of a loan. The second fee is called a "Reconveyance Fee." Lenders impose this fee on borrowers for reconveying the property deed to the borrower when the borrower pays off the mortgage loan balance. Both fees are specifically authorized by California statutes. *See* Cal.Civ.Code §§ 2941(e)(1) (West Supp.1994) (Reconveyance Fee) and 2943(e)(6) (West 1993) (Demand Fee).

The representative plaintiffs in this action are Jonathan A. Bloom, Susan Bloom, Mary Stern ("the Bloom plaintiffs"), and Robert S. Finn. On November 19, 1987, the Bloom plaintiffs secured a loan from defendant Coast Federal Bank F.S.B. ("Coast") to purchase real property. (First Am.Compl. ¶ 27.) On October 28, 1993, the Bloom plaintiffs tendered payment to Coast of a Demand Fee and a Reconveyance Fee. (*Id.* at ¶ 28.)[4]

On March 17, 1993, plaintiff Finn obtained a mortgage loan from defendant Countrywide Funding Corporation ("Countrywide") for the purchase of real property. (*Id.* at ¶ 30.) Finn paid Countrywide a Demand Fee on November 1, 1993.[5]

Plaintiffs' commenced the instant action in this Court on March 7, 1994, and subsequently filed a First Amended Complaint on March 28, 1994. The First Amended Complaint advances six claims for relief. The first and second claims allege that defendants violated RESPA's disclosure requirements, as codified at 12 U.S.C. §§ 2603 and 2607. The crux of plaintiffs' RESPA claims is that the defendant lenders failed to disclose the existence of Demand and Reconveyance Fees on the HUD–1 forms. They claim that such disclosure is required on a federal form prepared by the Department of Hous-

---

1. There are two motions to dismiss pending before this Court. One motion was filed by defendants Ray M. Martin, Robert L. Hunt II, Coast Federal Bank F.S.B., Coast Savings Financial, Inc., Coast Fed Services Corp., Countrywide Credit Industries, Inc., and Countrywide Funding Corp. ("the Countrywide defendants"). The other motion was filed by defendants Citicorp and Citibank Federal Savings Bank ("the Citicorp defendants"). Both motions address each of the claims for relief alleged in the First Amended Complaint. However, the Countrywood defendants' motion focuses primarily on the RESPA claims. The Citibank defendants' motion concentrates on plaintiffs' state law causes of action, and incorporates by reference the Countrywood defendants' arguments concerning RESPA. (*See* Citibank Def.s' Mot. to Dismiss at 4.)

2. Pursuant to Local Rule 220–1, the Court adjudicates the instant motions without oral argument.

3. The class consists of persons "who bought, sold, borrowed against or refinanced real estate in California during the period between Decem-

ber 22, 1974 to the present, inclusive ..., who did not receive disclosure or have knowledge of any fee, ..., incurred by borrowers at settlement and customarily required by the mortgage lender, settlement service provider or an affiliate thereof." (First Am.Compl. ¶ 15.) The class has not been certified.

4. One of plaintiffs' attorneys, Wayne Lesser, was a co-borrower on the Bloom plaintiffs' loan. As noted by defendants, this fact raises serious questions regarding the propriety of Lesser and/or his firm representing the plaintiffs in this action. *See Fechter v. HMW Indus.*, 117 F.R.D. 362, 364 (E.D.Pa.1987) (declining to certify class action where attorney was a *de facto* class representative by virtue of his close relationship to the claims alleged). Contrary to plaintiffs' contention, defendants' decision to call this matter to the Court's attention was neither "inappropriate" nor "unprofessional." (*See* Pls.' Opp'n at 7 n. 4.) In any event, since the Court is dismissing the action, the Court declines to discuss the propriety of Mr. Lesser's representation.

5. *Finn also engaged in a similar transaction with* defendant Citibank. (First Am.Compl. ¶ 33–34.)

ing and Urban Development ("HUD"). This form is known as a "Uniform Settlement Statement" or "HUD–1," and is provided to the borrower at the time the loan is made. Plaintiffs also maintain that the lenders' collection and sharing of such fees was improper. The third, fourth, fifth and sixth claims for relief allege causes of action based on state law.[6]

In their motion to dismiss, defendants argue that RESPA governs only those fees incurred in connection with "settlement services." Settlement services are those services necessary to close the loan (i.e., close escrow). Defendants further maintain that RESPA is not implicated in this lawsuit because Demand and Reconveyance Fees are not incurred at settlement. As such, defendants aver that dismissal of plaintiffs' RESPA claims is warranted. As alternative grounds for dismissal, the defendants contend that RESPA does not provide for a private right of action for disclosure violations. With regard to the alleged fee-splitting violation, defendants assert there are no allegations that defendants have shared or split fees with a third party. Finally, defendants maintain that the Bloom plaintiffs' RESPA claims are time-barred. The Court will discuss each of these issues in turn.

### DISCUSSION

#### A. Legal Standard for Motion to Dismiss

A dismissal under Rule 12(b)(6) is proper where plaintiff "can prove no set of facts which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). For the purposes of a motion to dismiss under this rule, the allegations in the complaint are taken as true. *Sheuer v. Rhoades,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "Dismissal can be based on lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990).

Thus, the Court may properly grant a Rule 12(b)(6) motion if it is clear from the face of the complaint and judicially-noticed documents that the plaintiffs cannot prevail as a matter of law. *See Cervantes v. City of San Diego,* 5 F.3d 1273, 1274–75 (9th Cir.1993).

#### B. RESPA Does Not Apply to Demand or Reconveyance Fees

Congress enacted RESPA to control real estate settlement costs by "insur[ing] that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a) (1989). To effectuate these objectives, RESPA requires advance disclosure of settlement costs, the elimination of kickbacks or referral fees, and a reduction of the amount that buyers are required to place in escrow accounts for taxes and insurance. *Id.* § 2601(b) (1989).

Here, plaintiffs allege violations of Sections 4 and 8 of RESPA which set forth the disclosure and anti-kickback provisions, respectively. Each of these sections apply only to settlement services. Section 4 requires that mortgage lenders provide borrowers with a standard disclosure form at or prior to the "settlement." 12 U.S.C. § 2603(b) (1989). This form must "itemize all charges imposed upon the borrower and all charges imposed upon the seller *in connection with the settlement....*" *Id.,* § 2603(a) (1989) (emphasis added). Similarly, section 8 prohibits kickbacks which are "incident to or a part of a real estate settlement service...." *Id.,* § 2607(a) (1989). Section 8 also prohibits fee splitting "of any charge made or received for the rendering of a real estate settlement service." 26 U.S.C. § 2607(b) (1989).

In order to state a claim under RESPA, plaintiffs must establish that the Demand and Reconveyance Fees at issue con-

---

6. The Third Claim for Relief is premised on defendants' alleged violations of California Civil Code §§ 1750, et seq., and 1918, et seq. The Fourth Claim for Relief is based on violations of

California Business and Professions Code § 17200. The Fifth Claim for Relief is for Fraud and Deceit and the Sixth Claim for Relief is for Negligent Misrepresentation and Negligence.

stitute charges rendered at or in relation to *settlement.* *See Eisenberg v. Comfed Mortgage Co. Inc.,* 629 F.Supp. 1157, 1159 (D.Mass.1986) (granting summary judgment for defendant after finding that a mortgage origination fee was not a "settlement service" within the purview of RESPA.) According to HUD, *"[s]ettlement* means the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan. This process may be called 'closing' or 'escrow' in different jurisdictions." Part 3500—Real Estate Settlement Procedures Act, 59 Fed.Reg. 6512 (Feb. 10, 1994) (to be codified at 24 C.F.R. § 3500.2).[7] This definition is in accord with the common legal meaning of settlement as it is used in real estate transactions. *See* Black's Law Dictionary 1372 (6th ed. 1990) (defining "settlement" as "[c]losing; the culmination of a particular transaction involving real property, such as the purchase and sale of real property, the execution of a lease or the making of a mortgage loan").

■ Where the fees or charges at issue are imposed *after* settlement, RESPA is inapplicable. For example, in *Greenwald v. First Fed. Sav. & Loan Ass'n,* 446 F.Supp. 620, 625 (D.Mass.1978), *aff'd,* 591 F.2d 417 (1st Cir.1979), the district court found that RESPA was inapplicable to the banks' payment of interest on escrow deposits. The court explained that such payments were "obviously" not part of settlement as defined under RESPA because they "can continue long after closing of the mortgage transaction during the entire life of the mortgage, ..." *Id.; see also Adamson v. Alliance Mortgage Co.,* 861 F.2d 63, 65–66 (4th Cir. 1988) (finding that under the Truth in Lending Act disclosure requirements, fees charged at the end of the loan need not be disclosed), *overruled on other grounds by Busby v. Crown Supply, Inc.,* 896 F.2d 833 (4th Cir.1990).

This view is also supported by two informal opinion letters issued by HUD which state that RESPA does not require disclosure of any post-settlement or post-closure fees. In a letter dated July 15, 1983, HUD characterized settlement services as those "rendered in connection with and in furtherance of the transfer of title, usually paid for at closing, and are often required by the lender." (HUD Informal Opinion Letter, dated July 15, 1983, *reprinted in* Paul Barron, Federal Regulation of Real Estate and Mortgage Lending App. 2–66 (1992 & Supp. 1993).) Several years later in 1987, HUD reiterated this view, stating that "Section 8(b) of RESPA is directed to practices preceding or accompanying settlement and not post-settlement practices...." HUD Informal Opinion Letter, June 26, 1987, *reprinted in* Paul Barron, Federal Regulation of Real Estate and Mortgage Lending App. 2–84 (1992 & Supp.1993).

There is no dispute between the parties regarding the meaning of "settlement" as it is used in RESPA. (*See* Pls.' Opp'n at 2.) Thus, the key issue is whether Demand and Reconveyance Fees are *incurred* in connection with *real estate settlement* (i.e., the closing of the loan or escrow).

■ As a starting point, it is significant that neither Demand nor Reconveyance Fees or any analogous fees appear in the list of "settlement services" defined by RESPA. Section 3 defines such services as:

> [A]ny services provided in connection with a real estate settlement including but not limited to the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, and the handling of the processing, and closing or settlement.

12 U.S.C. § 2602(3). The common thread running through these services is that each is ancillary or peripheral to "the closing of a real estate sale covered by RESPA." *United States v. Graham Mortgage Corp.,* 740 F.2d 414, 418 (6th Cir.1984). While this list is not

---

7. This definition is set forth in the recently-enacted Regulation X, a regulation promulgated by the Secretary of HUD. 12 U.S.C. § 2617(a) authorizes the Secretary of HUD "to prescribe such rules and regulations, ..., as may be necessary to achieve the purposes of [RESPA]."

technically exhaustive, it is illustrative of the types of services within the purview of RESPA. *Id.* at 417.

■ It is undisputed that neither fee is related to the closure or completion of the mortgage loan process. Moreover, both fees are contingent upon the occurrence of another event. With regard to the Reconveyance Fee, California Civil Code § 2941 provides that the obligation to issue a reconveyance certificate (along with the concomitant fee obligation) arises "when the obligation secured by any deed of trust has been satisfied." Cal.Civ.Code § 2941(b)(1). In other words, the fee is charged only if and when the borrower pays off the mortgage loan. Similarly, the Demand Fee is charged only when a borrower has prepared a demand statement "in response to a written demand made by an entitled person [i.e., the borrower].... " *Id.*, § 2943(a)(5). Since the payment of the fees is not required prior to or at settlement, the fees are not "incurred" at that time. *See In the Matter of CHG Int'l,* 897 F.2d 1479, 1486 (9th Cir.1990) ("A debt is incurred when the debtor first becomes legally bound to pay.").

Plaintiffs erroneously state in their opposition brief that "HUD has opined that both Demand Fees and Reconveyance fees are within the scope of RESPA-regulated, (sic) settlement-services." (Pls.' Opp'n at 11.) Contrary to plaintiffs' representations, however, HUD rendered no such opinion. Rather, in a letter to plaintiffs' counsel, a HUD attorney stated that Demand and Reconveyance Fees have "not been considered" as fees to be disclosed on the HUD–1 Settlement Statement. (*See* Lesser Decl.Ex. 3.) While the HUD attorney acknowledged that such fees could fall within the purview of RESPA "if they are required by the lender," the attorney also indicated that he did not have sufficient information regarding the fees to offer a more specific answer. (*Id.*)

The Court agrees with defendants that neither of the fees at issue could have been incurred at or in connection with settlement because neither fee was charged in connection with closing the loan. Accordingly, the Court finds that RESPA is inapplicable.

## C. There is No Private Right of Action Under Section 4 of RESPA (Disclosure Provisions)

Defendants' second ground for dismissing the amended complaint is that there is no private right of action under Section 4 of RESPA for the disclosure claim. (Defs.' Mot. at 16.) Plaintiffs concede that RESPA provides no express right of action; however, plaintiffs assert that an implied right of action exists under the statute. (Pls.' Opp'n at 11.)

### 1. Plaintiffs Must Show Congressional Intent to Imply a Private Right of Action

■ To determine whether RESPA provides for an implied, private right of action, the Court must focus on "the intent of Congress when it enacted the statute in question." *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 536, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 (1984). "[U]nless ... Congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Karahalios v. National Fed'n of Fed. Employees,* 489 U.S. 527, 532–33, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989). "In the absence of strong indicia of contrary congressional intent, [the court is] compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Id.* "There is a presumption against implied rights of action—a presumption that will endure unless plaintiff proffers adequate evidence of contrary congressional intent." *Stowell v. Ives,* 976 F.2d 65, 70 n. 5 (1st Cir. 1992). Thus, the burden of demonstrating Congressional intent to create an implied right of action lies with the plaintiffs. *See Suter v. Artist M.,* —— U.S. ——, ——, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992).

The traditional four-prong test for determining whether an implied right of action exists was set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26

(1975).[8] More recently, however, the Supreme Court has focussed almost exclusively on the second *Cort* factor—whether Congress intended to create a private remedy. *Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988). In fact, the Ninth Circuit has held that an evaluation of the other *Cort* factors is not necessary if the Court finds that Congress did not intend to create a private right of action. *Stupy v. United States Postal Service*, 951 F.2d 1079, 1081 (9th Cir.1991) (citing *California v. Sierra Club*, 451 U.S. 287, 298, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981)). A determination of legislative intent "begins with an examination of the language of the statute and then proceeds to a review of the legislative history and the application of traditional aids of statutory interpretation." *Stupy*, 951 F.2d at 1081.

### 2. There is No Indication that Congress Intended to Create a Private Right of Action

The structure of RESPA's various statutory provisions indicates that Congress did not intend to create a private right of action for disclosure violations under 12 U.S.C. § 2603. This intent is evident from Congress' decision to provide private remedies for violations of several sections of RESPA but not for Section 4.

Specifically, Sections 8 (12 U.S.C. § 2607) and 10 (12 U.S.C. § 2609) of RESPA provide for treble damages and attorneys' fees. 12 U.S.C. §§ 2607(d)(2) & (5) and 2608(b).[9] The remaining RESPA sections (4, 5 and 10) do not contain any such provisions. The inclusion of remedies in certain RESPA provisions and their omission in others is strong evidence that Congress did not intend to provide a private remedy for violations of Section 4 (12 U.S.C. § 2603). *See Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 21, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979) (holding that omission of private remedies in subsequent version of a securities statute "strongly suggest[ed]" that Congress did not intend to create a private right of action).

Following the reasoning articulated above, the Seventh Circuit in *Allison v. Liberty Sav.*, 695 F.2d 1086 (7th Cir.1982), held that no private remedy exists under Section 10 (12 U.S.C. § 2609) of RESPA—a statute which, like Section 4, is also silent as to the existence of private remedies. In reaching this conclusion, the *Allison* court explained that "[t]he fact that Congress explicitly provided for federal private remedies in three of the four sections immediately preceding § 10 is evidence that Congress intended to deny such remedies by its silence in § 10." *Id.* at 1088–89. At least two other federal district courts have reached the same conclusion. *Michels v. Resolution Trust Corp.*, 1994 WL 242162 (D.Minn.1994) (no private remedy in Section 10); [10] *Bergkamp v. New York Guardian Mortgagee Corp.*, 667 F.Supp. 719, 723 (D.Mont.1987) (same).[11]

Plaintiffs contend that analysis in *Allison* concerning Section 10 of RESPA is not pro-

---

**8.** The *Cort* test asks the following questions: (1) Is the plaintiff one of the class for whose especial benefit the legislation was enacted? (2) Is there any indication of legislative intent (explicit or implicit), either to create such a remedy or deny one? (3) Is the remedy sought consistent with the underlying purpose of the legislative scheme to imply such a remedy for plaintiff? and (4) Is the cause of action one traditionally relegated to state law? *Cort*, 442 U.S. at 78, 95 S.Ct. at 2087.

**9.** Section 6, which was repealed in 1976, also contained private remedies.

**10.** In addition to following the analysis in *Allison*, the district court in *Michels* also noted that Congress amended RESPA to replace the original Section 6 which was repealed in 1975. The new Section 6 specifically provides for a private right of action for violations of its provisions. *See* 26 U.S.C. § 2605(f). "This subsequent activity suggests that Congress' failure to explicitly provide for violations of [Section 4] was not a mere oversight." *Michels*, 1994 WL 242162 at *3. "Obviously, ... when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572, 99 S.Ct. 2479, 2487, 61 L.Ed.2d 82 (1979).

**11.** Only one circuit court has found a private right of action under Section 10. *Vega v. First Fed. Sav. & Loan Ass'n*, 622 F.2d 918, 925 n. 8 (6th Cir.1980). The Sixth Circuit's conclusion—which is contained in a footnote—is not supported by any legal analysis whatsoever. Both the *Allison* and *Michels* courts have expressly disapproved of *Vega*.

bative of whether Section 4 contains an implied private right of action. (*See* Pls.' Opp'n at 13.) Plaintiffs maintain that, unlike Section 10, Section 4 had a "companion" provision in Section 6 (12 U.S.C. § 2605). This "companion" section, which was repealed in 1976, contained private remedies. From this, plaintiffs infer that Congress intended to imply a private right of action in Section 4.

■■■■ Plaintiffs' argument defies logic. As an initial matter, plaintiffs offer no authority to support the notion that the existence of a private remedy in one section of a statute somehow implies a Congressional intent to apply similar remedies in another section. Indeed, the opposite is true: "where Congress has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." *Sundance Land v. Community First Fed. Sav. & Loan,* 840 F.2d 653, 663 (9th Cir. 1988). Moreover, even if plaintiffs were correct, the fact that Congress repealed the companion statute which contained the private remedy is strong evidence that Congress intended that the statute provides no private action. *Transamerica,* 444 U.S. at 21, 100 S.Ct. at 247 ("The fact that it enacted no analogous provisions in the legislation here at issue strongly suggests that Congress was simply unwilling to impose any potential monetary liability on a private suitor.").

■■■■ Plaintiffs also make an ancillary argument that Congressional intent to provide a civil remedy in Section 4 is evidenced by the stated purpose of RESPA—that purpose being to curb abusive settlement practices in the real estate industry. (Pls.' Opp'n at 12.) Such amorphous goals, however, do not translate into a legislative intent to create a private right of action. *See Sundance Land,* 840 F.2d at 653 (mere fact that antitrust statute had "broad deterrent objectives" and an "expansive remedial purpose" was insufficient to demonstrate that Congress intended to provide a private remedy for all injuries traceable to "antitrust violations.") Indeed, taken to its logical conclusion, plaintiffs' theory of intent would in effect render superfluous all express rights of action. Thus, the

Court finds that there is no private right of action under 12 U.S.C. § 2603.

### D. Plaintiffs Have Not Stated a Fee–Splitting Claim Under Section 8 of RESPA

■■■■ In addition to the alleged disclosure violations in 12 U.S.C. § 2603, plaintiffs' First and Second Claims for Relief also allege that defendants have violated Section 8 of RESPA, 12 U.S.C. § 2607. (First Am. Compl. ¶¶ 49–60.) Plaintiffs allege that: (1) defendants violated the disclosure provisions set forth at 12 U.S.C. § 2607(c); (2) the Demand and Reconveyance Fees constitute "unearned/excessive fees" in violation of 12 U.S.C. § 2607(b); and (3) defendants "violated the required use provisions of section 2603, 2607 related to controlled business relationships (the lender—trustee relationship between Coast and Coast Fed.)." (*See* Pls.' Opp'n at 7–8.)

The fatal flaw in plaintiffs' claims under Section 8 is that they are devoid of any allegation that either the Demand or Reconveyance Fee was shared with a third party. *Mercado v. Calumet Fed. Sav. & Loan Ass'n,* 763 F.2d 269, 270 (7th Cir.1985) (no violation of Section 8 occurs unless the lender gives or receives "any portion, split, or percentage of any charge to a third party"); *Durr v. Intercounty Title Co. of Ill.,* 14 F.3d 1183, 1187 (7th Cir.1994) (reaffirming rule stated in *Mercado* ); *Duggan v. Independent Mortgage Corp.,* 670 F.Supp. 652, 653 (E.D.Cir. 1987) (granting summary judgment for defendant on 12 U.S.C. § 2607(b) claim where, "[a]s in *Mercado,* there is no third party present").

Plaintiffs do not dispute that they have not alleged the requisite splitting of fees. Instead, they rely on an older Seventh Circuit case for the proposition that the involvement of two parties is not necessary to establish fee splitting. (Pls.' Opp'n at 21 (citing *United States v. Gannon,* 684 F.2d 433, 438 (7th Cir.1981) (en banc)). In *Gannon,* an individual, in his official capacity charged fees for settlement services. He then remitted a portion of the fee to the county and kept the rest for himself. Based on those facts, the Seventh Circuit held that a "single individual can violate § 2607(b) by receiving in his official

capacity a 'charge' for rendering the settlement services, but personally keeping a portion of the charge in fact for something other than the performance of those services." *Id.*

Plaintiffs' reliance on *Gannon* is rather curious, given that it does not support their position. Even under *Gannon*, there is still a requirement under 12 U.S.C. § 2607 that the illicit fee be shared with a party "who did nothing in return for portions they received." *See Mercado* 763 F.2d at 271. Thus, in *Gannon*, the Seventh Circuit (which incidentally is the same circuit which decided both *Mercado* and *Durr*) found that a single person could be liable of fee splitting where he received a portion of a fee without delivering any service other than the one he was legally obligated to perform in exchange for the statutory fee payable to the County. *Mercado* 763 F.2d at 271.

In the instant case, no where in the complaint do the plaintiffs allege that the various defendant lending institutions shared fees for services they did not perform. In fact, plaintiffs tacitly admit this deficiency, as evidenced by their unsupported allegation that "each of the defendants wears two hats ... [as] both a lender and settlement service provider." (Pls.' Opp'n at 23.) Aside from the fact that they cite no authority for this proposition, there are also no allegations in the complaint to this effect. In short, plaintiffs' Section 8 claims under RESPA (12 U.S.C. § 2607) fail as a matter of law.

### E. *The Bloom Plaintiffs' RESPA Claims are Time–Barred*

#### 1. *Plaintiffs' Claims Accrued in 1987*

Defendants' final contention is that the Bloom plaintiffs' RESPA claims are time-barred. (*See* Defs.' Mot. at 20.) Private RESPA claims carry a one-year statute of limitations. 12 U.S.C. § 2614. Defendants contend that the alleged non-disclosure of the Demand and Reconveyance Fees took place over six years ago in 1987, (First Am.Compl. ¶ 27), and hence, any RESPA claims plaintiffs may have are now untimely.

Plaintiffs respond that the Bloom plaintiffs' claims did not accrue until October 1993, when they paid fees which were not disclosed on the HUD–1 form. (Pls.' Opp'n at 24.) "Under federal law a cause of action accrues when the plaintiff is aware of the wrong and can successfully bring a cause of action." *Acri v. International Ass'n of Machinists & Aerospace Workers,* 781 F.2d 1393, 1396 (9th Cir.), *cert. denied,* 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 29 (1986). "[K]nowledge of injury is essential for a cause of action to accrue." *Shiny Rock Mining Corp. v. United States,* 906 F.2d 1362, 1364 (9th Cir.1990). Actual knowledge is not required, however, as constructive knowledge of the injury will suffice. *Id.* at 1364–65.

Here, the Bloom plaintiffs' claim of ignorance is without merit. The Mortgage Loan Rider executed by each Bloom plaintiff in November 1987 clearly states that the "The Trustee named in the Security instrument ... may charge a reasonable reconveyance fee...." (Philmon Decl.Ex. B at ¶ 5.) Similarly, the Deed of Trust executed by these same parties in November 1987 states that the "Lender may collect a [demand] fee ... for furnishing a statement of obligation as provided by Section 2943 of the Civil Code of California." (*Id.,* Ex. A at ¶ 24.)

These legal instruments clearly placed plaintiffs on constructive—if not actual—notice of the possibility that they would be charged Demand and/or Reconveyance Fees.[12] Plaintiffs could have easily determined that the HUD–1 form did not disclose the Demand or Reconveyance Fees by comparing the form with the documents they had signed. Because plaintiffs had knowledge of the nondisclosure in 1987, their RESPA claims accrued at that time and are now time-barred.

#### 2. *Equitable Tolling Does Not Save Plaintiffs' Claims*

Plaintiffs also make a weak argument that their claims are timely under the

---

12. The Court does not consider matters outside of the pleadings on a Rule 12(b)(6) motion. However, "a document is not 'outside' the complaint if the compliant specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell,* 14 F.3d 449, 453

(9th Cir.1994). Here, plaintiffs advance specific allegations concerning the content of the deeds of trust. (*E.g.,* First Am.Compl. ¶¶ 46, 63(a).) Thus, the Court may consider these documents without converting this motion into a motion for summary judgment. *Branch,* 14 F.3d at 454.

doctrine of equitable tolling. As an initial matter, it is unclear whether equitable tolling applies to RESPA claims. *Compare Hardin v. City Title & Escrow Co.,* 797 F.2d 1037, 1041 (D.C.Cir.1986) (no tolling) *with Moll v. United States Life Title Ins. Co.,* 700 F.Supp. 1284, 1293 (S.D.N.Y.1988) (applying equitable tolling to RESPA). However, this Court need not resolve this conflict, as the necessary elements for applying the doctrine are absent from this case.

 Equitable tolling generally applies in "extraordinary circumstances beyond plaintiffs' control which made it impossible to file their claims on time." *Seattle Audubon Soc'y v. Robertson,* 931 F.2d 590, 595 (9th Cir.1991), *rev'd on other grounds,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992); *see also Scholar v. Pacific Bell,* 963 F.2d 264, 267 (9th Cir.1992) ("The equitable tolling doctrine has been applied by the Supreme Court in certain circumstances, but it has been applied sparingly; ....."). As discussed above, defendants did nothing to conceal the possibility that plaintiffs might at some future point in time incur Demand and/or Reconveyance Fees. Thus, equitable tolling does not apply to this case.

### F. Amendment of the Complaint Would Be "Futile"

When the complaint is dismissed for failure to state a claim, leave to amend should be granted unless the Court determines that other factual allegations consistent with the challenged pleading could not cure the deficiency. *Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986). The Court has carefully reviewed the allegations in the complaint. As discussed above, neither Demand nor Reconveyance Fees are governed by RESPA. Thus, any amendment to the pleading with regard to RESPA would be futile. Thus, the Court dismisses plaintiffs' RESPA claims without leave to amend.

### G. The State Law Claims

A district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). As discussed *supra,* plaintiffs' RESPA claims, which are the sole ostensible basis for jurisdiction in this Court, are fatally flawed and have been dismissed. Accordingly, the Court declines to assert supplemental jurisdiction over and dismisses the remaining state law claims.

### CONCLUSION

The key issue in this case is whether Demand and Reconveyance Fees are subject to RESPA. As discussed above, they are not. RESPA regulates fees which lenders impose in the context of closing a real estate loan. Demand and Reconveyance Fees do not meet this definition. Thus, plaintiffs' primary contention that Demand and Reconveyance Fees are incurred at settlement is without merit. Accordingly,

IT IS HEREBY ORDERED THAT defendants' motion to dismiss is GRANTED as to the First and Second Claims for Relief under RESPA. The Court declines to exercise supplemental jurisdiction over the remaining state law claim and those Claims for Relief are also DISMISSED.

IT IS SO ORDERED.