**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 11, 2003**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 02-60539

———————

ANNA D. SNOW; TERESA J. HALEY; RONALD DUFF; SABRINA DUFF;
RICKY WILLIAMS; ANGELA WILLIAMS, AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellants,

VERSUS

FIRST AMERICAN TITLE INSURANCE COMPANY,

Defendant-Appellee.

****************************************************

———————

m 02-60627

———————

ANDREA CHENAULT; JOANNA SMITH; PAMELA EDWARDS; FRANKIE JUDD;
DEBBIE L. WILSON; KENNETH W. WILSON; CELESTINE TURNER;
GUY E. WATTS, JR.; JANIE G. WATTS; LISA TIMMONS,
AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellants,

VERSUS

MISSISSIPPI VALLEY TITLE INSURANCE COMPANY;
OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Mississippi

Before SMITH, DENNIS, and CLEMENT,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

In these cases consolidated for appeal, plaintiffs sued for alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, in connection with their purchase of title insurance. The district court in each case ruled that RESPA's one-year statute of limitations bars recovery. Agreeing with that conclusion, we affirm.

## I.

Plaintiffs are putative classes of real estate purchasers.[1] Defendants are title insurance companies. Plaintiffs bought title insurance from agents working for the defendant companies. Plaintiffs paid for the insurance at their real estate closings.

Though defendants have different compensation plans, plaintiffs allege that these plans have a common effect: The agents receive additional compensation for generating high volumes of title insurance sales for defendants. First American Title Insurance Company pays

annual bonuses to agents who collect certain high amounts of premiums. Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company pay most of their agents sixty percent of the premiums they collect, but agents with certain high volumes receive seventy percent of their collections.

Plaintiffs allege that these compensation plans violate RESPA's anti-kickback and fee-splitting provisions, 12 U.S.C. § 2607(a)-(b). They sued more than one year after their real estate closings. Defendants argued that RESPA's one-year statute of limitations, 12 U.S.C. § 2614, therefore barred the suits. The district courts agreed and entered judgment for defendants.

## II.

These appeals have different procedural postures. The *Snow* court entered a judgment of dismissal under FED. R. CIV. P. 12(b)(6); the *Chenault* court entered summary judgment under FED. R. CIV. P. 56(c). When reviewing a dismissal, we take the well-pleaded facts in the complaint as true. *Kane Enters. v. Mac-Gregor (U.S.A.) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). When reviewing a summary judgment, though, we look to whether the plaintiff adduced specific evidence creating a genuine issue of material fact. *Chaplin v. Nations-Credit Corp.*, 307 F.3d 368, 371-72 (5th Cir.

---

[1] Neither district court certified a class before entering judgment, so plaintiffs appear in their individual capacities.

2002).

These differences do not affect our review, because plaintiffs and defendants in both cases agree on the relevant facts and dispute only the meaning of certain statutory language in § 2614. We therefore accept the undisputed facts and review the question of statutory interpretation *de novo*. *United States v. Phipps*, 319 F.3d 177, 183 (5th Cir. 2003).

### III.

Congress enacted RESPA "to ensure that real estate consumers 'are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices.'" *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003) (quoting 12 U.S.C. § 2601(a)). To this end, RESPA prohibits any person from giving or accepting "any fee, kickback, or thing of value pursuant to any agreement or understanding . . . that business incident to or a part of a real estate service . . . shall be referred to any person," 12 U.S.C. § 2607(a), and from accepting any unearned fee in relation to a settlement service, 12 U.S.C. § 2607(b).

"[T]he term 'thing of value' includes any payment, advance, funds, loan, service, or other consideration." 12 U.S.C. § 2602(2). The RESPA regulations elaborate this statutory definition to include "credits representing monies that may be paid at a future date." 24 C.F.R. § 3500.14(d). The parties agree that defendants gave, and their agents received, a "thing of value" when plaintiffs paid for the title insurance at their closings, because the agents thereby earned a credit toward future payment under defendants' compensation plans.[2]

The statute of limitations for private plaintiffs suing for an alleged violation of § 2607 is one year. 12 U.S.C. § 2614. The parties disagree over what triggers this one-year statute of limitations. Section 2614 states that the limitations period runs "from the date of the occurrence of the violation." Defendants argue that "the violation" (if any) occurred at the closing when the agents earned the allegedly prohibited credit toward future payment under defendants' compensation plans. Thus, defendants conclude that § 2614 bars these suits because plaintiffs sued more than one year after their closings.

Plaintiffs acknowledge that a violation (if any) occurred at the closing and therefore that they could have sued immediately thereafter. Yet, plaintiffs counter that the closing is not the only event that triggers the one-year period. They argue that limitations began to run anew when defendants paid the credit that the agents had earned at the closing. Thus, plaintiffs conclude that § 2614 does not bar their suits, because they sued less than one year after defendants tendered the additional income to the agents.

We agree with defendants' interpretation: The phrase "the date of the occurrence of the violation" refers to the closing, i.e., when the plaintiffs paid for the insurance, because that is when the agents earned the allegedly prohibited "thing of value."[3] We interpret

---

[2] Defendants, of course, contest that this "thing of value" violated the statute, but we need not address that question.

[3] We use "closing" interchangeably with the
(continued...)

3

§ 2614 in this way for four main reasons.

First and most importantly, the statutory text and structure better support this reading. In § 2614, Congress spoke of a single triggering violation, not multiple violations. "Any action pursuant to . . . section . . . 2607 . . . may be brought in [a court] . . . where the *violation* is alleged to have occurred, within . . . 1 year in the case of a *violation* of section 2607 . . . from the date of the occurrence of the *violation*[.]" 12 U.S.C. § 2614 (emphasis added). Had Congress wanted the various steps in a single transaction to trigger the statute of limitations multiple times, it would have spoken of multiple "violations."

When creating the private right of action for kickbacks and fee-splitting, Congress also spoke of a single "violation." 12 U.S.C. § 2607(d)(2). As plaintiffs recognize, this use of the term "violation" refers to the single integrated transaction, regardless how many steps it has. This undermines their own argument, however, because the same term should be given the same meaning throughout the statute. *United States v. Ho*, 311 F.3d 589, 606 (5th Cir. 2002).

Plaintiffs' interpretation also would upset Congress's policy choices regarding limitations periods for RESPA actions. Section 2614 actually contains three separate statutes of limitations. The Secretary of Housing and Urban Development, state attorneys general, and state insurance commissioners may sue within three years of any violation of RESPA. 12 U.S.C. § 2614. Private plaintiffs, too, have a three-year limitations period for suits alleging a violation of § 2605. *Id.* Only for private plaintiffs suing under §§ 2607 and 2608 did Congress impose a one-year limitations period. *Id.*

By extending indefinitely the limitations period for private plaintiffs suing under § 2607, plaintiffs' interpretation would "create[ ] a limitations period that is longer than Congress could have contemplated," *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997), for such suits. The interpretation thus would negate Congress's decision to impose three different limitation periods in § 2614. We are obliged, however, to preserve these policy choices. *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

Furthermore, Congress directed RESPA toward the closing. The primary ill that § 2607 is designed to remedy is the potential for "unnecessarily high settlement charges," § 2601(a), caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services. This ill occurs, if at all, when the plaintiff pays for the service, typically at the closing. Plaintiffs therefore could have sued at that moment, and "the standard rule [is] that the limitations period commences when the plaintiff has a complete and present cause of action." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 201

---

(...continued)

date of plaintiffs' payment for the title insurance, because they are identical in this case, as they are in most real estate transactions. We recognize, however, the possibility that purchasers could pay for a settlement service subject to § 2607(a)-(b) at a time other than the closing, in which case "the date of the occurrence of the violation" presumably would be the date of payment, not the unrelated closing.

(1997) (quotation marks omitted).[4]

Indeed, plaintiffs should be indifferent to whether defendants pay their agents in the future, because it would not affect the price plaintiffs paid for title insurance. This statutory emphasis on the closing further indicates that the limitations period begins to run when the agents earned the allegedly prohibited credit at the closing.

Second, plaintiffs' interpretation would create several absurd results, which we must endeavor to avoid. *United States v. Ret. Servs. Group*, 302 F.3d 425, 435-36 (5th Cir. 2002). Most obviously, plaintiffs' interpretation would allow them to recover twice for a single violation in connection with a single settlement service, once for the violation at closing and again for the violation at payment. Nothing in the statute authorizes this double recovery. To the contrary, Congress already imposed treble damages for any kickback or fee-splitting violation. 12 U.S.C. § 2607(d)(2).[5]

Plaintiffs' interpretation also would let the statute of limitations regenerate itself like a phoenix from the ashes. Plaintiffs note that some insurance companies, instead of cash payments, might give their high-volume agents trips to events such as annually-occurring golf tournaments. Suppose, however, that a company rewarded its highest volume agents with trips to the Olympics. In this situation, plaintiffs contend that the limitations period would begin at the closing and expire a year later, only to be restarted years later when the agents travel to the Olympics and then to run for another year. Neither the statute nor the caselaw supports this unheard-of proposition.[6]

In addition, under plaintiffs' interpretation, like plaintiffs would face unlike limitations periods. Suppose two persons buy title insurance from the same agent on the same day at the same price and subject to the same compensation plan. For the first purchaser, the agent remits the full premium to the insurance company but is credited with a

---

[4] *See also Clark v. Iowa City*, 87 U.S. (20 Wall.) 583, 589 (1875) ("All statutes of limitations begin to run when the right of action is complete[.]").

[5] Plaintiffs attempt but fail to dispel the possibility of such double recovery. They emphasize § 2607(d)(2), which states that "[a]ny person or persons who violate the prohibitions or limitations of this section shall be . . . liable to the person . . . charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service." They argue first that the measure of damages is the "charge paid," and, because they paid only one charge, there can only be one recovery. Yet, there is no reason, under their in-

(continued...)

[5](...continued)
terpretation, why they could not recover twice for the treble value of the single charge paid. They also argue that Congress used the plural "prohibitions or limitations" to describe the violation but used the singular "charge paid" to describe the measure of liability. Yet, the phrase "prohibitions or limitations" plainly refers to the multiple rules imposed by § 2607, not the number of violations committed under the section.

[6] *Cf. Reiter v. Cooper*, 507 U.S. 258, 267 (1993) ("While it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute.").

future payment. For the second purchaser, the agent retains his share of the premium and remits the remainder to the company. The first purchaser enjoys an indefinitely extended limitations period, whereas the limitations clock begins to tick immediately for the second purchaser.

RESPA nowhere suggests that Congress intended such dissimilar treatment. "If Congress had intended the statute of limitations to float in this way, it could have so provided in explicit language." *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 325 (M.D.N.C. 2002).

Third, we create a simple and workable rule for the application of § 2614 by interpreting the phrase "the date of the occurrence of the violation" as the date of the closing, which is a definite and indisputable date known to potential plaintiffs and defendants. The date when defendants pay their agents, on the other hand, is unknown to plaintiffs; it could occur weeks, months, or even years after the closing.

Plaintiffs' interpretation thus would generate confusion and uncertainty about the timeliness of many RESPA claims. In practice, it would encourage tardy plaintiffs to sue and hope that discovery turns up a recent payment that restarts the limitations period.[7] This interpretation "thereby conflicts with a basic objectiveSSreposeSSthat underlies limitations periods." *Klehr*, 521 U.S. at 187.

Fourth, the caselaw, albeit limited, uniformly supports defendants' interpretation. No circuit has interpreted the phrase "the date of the occurrence of the violation" in § 2614. One district court, in a thorough opinion, has held that "the violation occurs and the limitations period begins once a borrower overpays for a settlement service that is subject to [§ 2607]." *Mullinax*, 199 F. Supp. 2d at 325. Several other courts have assumed in *dictum* that the violation occurs when a plaintiff pays for the settlement service.[8] Plaintiffs, by contrast, cannot point to a case that holds or even assumes that the limitations period can restart when the defendant pays an allegedly illegal kickback or fee.

AFFIRMED.

---

[7] Plaintiffs have not raised, and we therefore express no opinion on, the question whether § 2614 is subject to equitable tolling. *Compare Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1039-41 (D.C. Cir. 1986) (holding that § 2614 is not subject to equitable tolling) *with Mullinax*, 199 F. Supp. 2d at 326-28 (holding that § 2614 is subject to equitable tolling).

[8] *See, e.g.*, *Salois v. Dime Savs. Bank*, 128 F.3d 20, 25 (1st Cir. 1997); *Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1349 (S.D. Ga. 2000); *Bloom v. Martin*, 865 F. Supp. 1377, 1386 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (9th Cir. 1996).