**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL H. RESH, On Behalf of
Himself and All Others Similarly
Situated; WILLIAM SCHOENKE;
HEROCA HOLDING, B.V.; NINELLA
BEHEER, B.V.,
      *Plaintiffs-Appellants*,

v.

CHINA AGRITECH, INC.; YU CHANG,
Company's CEO, President,
Secretary, and Chairman of the
Board; YAU-SING TANG, AKA
Gareth Tang, Company's Chief
Financial Officer; GENE MICHAEL
BENNETT, Director of CAGC; XIAO
RONG TENG, Director of CAGC;
MING FANG ZHU; LUN ZHANG DAI,
Director of CAGC; CHARLES LAW,
AKA Charles C. Law, AKA Charles
Chien-Lee Law, AKA Charles
Chien-Lee Loh, AKA Chien-Lee C.
Loh, Director of CAGC; ZHENG
WANG, Director of CAGC,
      *Defendants-Appellees.*

No. 15-55432

D.C. No.
2:14-cv-05083-
RGK-PJW

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted December 5, 2016
Pasadena, California

Filed May 24, 2017

Before:  Stephen Reinhardt, William A. Fletcher,
and Richard A. Paez, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Class Actions

The panel reversed the district court's order dismissing as untimely a would-be class action alleging that China Agritech, Inc. and its managers and directors violated the Securities Exchange Act of 1934, and remanded for further proceedings.

The panel explained that the district court's invitation to file a complaint in a separate individual suit does not render non-appealable the district court's dismissal of the class action complaint.  The panel also wrote that appellate jurisdiction is proper, notwithstanding that the plaintiffs did

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

not wait for the district court to set forth its judgment in a separate document, because the district court's order was a full adjudication of the issues that clearly evidenced its intention that the order be final.

The panel held that the plaintiffs' would-be class action is not time barred, where (1) the plaintiffs were unnamed plaintiffs in two earlier would-be class actions against many of the same defendants based on the same underlying events; (2) class action certification was denied in both cases; (3) the earlier actions were timely; and (4) under *American Pipe & Construction Co v. Utah*, 414 U.S. 538 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the statute of limitations for the individual claims of would-be class members in the earlier actions was tolled during the pendency of those actions.

The panel wrote that permitting future class-action named plaintiffs, who were unnamed members in previously uncertified classes, to avail themselves of *American Pipe* tolling would advance the policy objectives that led the Supreme Court to permit tolling in the first place. The panel wrote that to the degree that the panel's conclusion may be thought likely to lead to abusive filing of repetitive class actions, the current legal system – including Fed. R. Civ. P. 23 and principles of preclusion and comity -- is adequate to respond to such a concern.

**COUNSEL**

Matthew M. Guiney (argued), Wolf Haldenstein Adler Freeman & Herz LLP, New York, New York; Betsy C. Manifold, Francis M. Gregorek, Rachele R. Rickert, and Marisa C. Livesay, Wolf Haldenstein Adler Freeman & Herz LLP, San Diego, California; David A.P. Brower, Brower Piven, New York, New York; for Plaintiffs-Appellants.

Seth Aronson (argued), Brittany Rogers, and Michelle C. Leu, O'Melveny & Myers LLP, Los Angeles, California; Abby F. Rudzin, O'Melveny & Myers LLP, New York, New York; for Defendants-Appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

Plaintiffs bring a would-be class action alleging that China Agritech, Inc. ("China Agritech") and its managers and directors violated the Securities Exchange Act of 1934 ("Exchange Act"). Plaintiffs were unnamed plaintiffs in two earlier would-be class actions against many of the same defendants based on the same underlying events. Class action certification was denied in both cases. Under *American Pipe & Construction Co v. Utah*, 414 U.S. 538 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the statute of limitations was tolled during the pendency of these two suits for plaintiffs' individual claims. There is thus no time bar preventing plaintiffs from bringing the present suit as joined individual claims rather than as a class action. The question before us is whether plaintiffs are time-barred from pursuing their suit as a class action.

For the reasons that follow, we hold that plaintiffs are not time-barred from bringing a class action.

## I. Background

China Agritech is a holding company incorporated in Delaware with its principal place of business in Beijing, China. The company claims to operate through various subsidiaries that manufacture and sell organic compound fertilizers and related products to farmers in twenty-eight Chinese provinces. China Agritech began listing its shares on the NASDAQ Stock Exchange in 2005. In a 2009 filing with the U.S. Securities and Exchange Commission ("SEC"), China Agritech reported a net revenue of $76 million, which was triple the $25 million in revenue it reported for 2005.

On February 3, 2011, LM Research, a market research company, published a report entitled "China Agritech: A Scam" ("LM Report"). The report, written by individuals who held a short position in China Agritech stock, asserted that China Agritech was "not a currently functioning business that [was] manufacturing products," but instead was "simply a vehicle for transferring shareholder wealth from outside investors into the pockets of the founders and inside management." Alleging idle factories, minimal investments, and fictitious contracts, the report concluded that China Agritech had "grossly inflated its revenue, failed to account for tens of millions of investor dollars, and [had] virtually no product in the market." Upon release of the LM Report, China Agritech's shares declined from $10.78 per share on February 2, 2011, to $9.85 per share on February 3, 2011.

China Agritech denied the allegations in an eight-page letter to shareholders. On February 15, 2011, Bronte Capital,

a hedge fund that also held a short position in China Agritech, responded to China Agritech's letter in an article sarcastically titled, "China Agritech: China's amazing productivity levels" ("BC Article"). The BC Article contended that photos released by China Agritech in its letter did not show the most basic equipment required for operations of the magnitude that China Agritech claimed. For example, the pictures showed 40 kg fertilizer bags being moved manually by individual human laborers rather than with forklifts, calling into question how a factory reported to manufacture 100,000 tons of granular fertilizer annually could possibly operate as depicted. China Agritech's stock value declined to $7.44 per share the next day.

On March 13, 2011, China Agritech announced the formation of a Special Committee of its Board of Directors to investigate the allegations of fraud. The next day, China Agritech dismissed its independent auditor, Ernst & Young Hua Ming ("E&Y"), and publicly disclosed that E&Y had insisted, in December 2010, that the board commence an investigation of accounting problems it had previously identified. Also on March 14, 2011, NASDAQ halted trading in China Agritech stock and initiated delisting proceedings. On October 17, 2012, the SEC issued an enforcement order revoking the registration of China Agritech stock.

## II. Procedural History

### A. The *Dean* Action

On February 11, 2011, Theodore Dean, on behalf of himself and all others similarly situated, filed a would-be class action against China Agritech and several of its managers and directors. *See Dean v. China Agritech, Inc.*,

Case No. 2:11-cv-1331-RGK-PJW (C.D. Cal.) (the "*Dean* Action"). Dean alleged that China Agritech had materially misstated its net revenue and income for the third quarter in 2009 on its SEC Form 10-Q filing, and had materially misstated its net revenue and income for fiscal years 2008 and 2009 in its 2009 SEC Form 10-K filing. The complaint was filed eight days after release of the LM Report. The case was assigned to Judge Klausner in the Central District of California.

On the same day that the *Dean* Action was filed, Dean's counsel notified China Agritech shareholders of the class action through two global media platforms, Business Wire and GlobeNewswire, inviting shareholders to come forward and serve as lead plaintiff. He repeated the notification a week later. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)*.* On April 12, 2011, pursuant to § 21D(a)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), six shareholders sought appointment as lead plaintiff and approval of lead counsel. On May 16, 2011, the district court denied without prejudice these motions as premature.

On June 22, 2011, Dean filed an Amended Complaint with four additional named plaintiffs and two additional defendants. The amended *Dean* Action alleged claims for violations of: (1) Section 10(b) of the Exchange Act and SEC Rule 10b-5 by China Agritech and all individual defendants; (2) Section 20(a) of the Exchange Act by the individual defendants; (3) Section 11 of the Securities Act of 1933 ("Securities Act") by all defendants; and (4) Section 15 of the Securities Act by the individual defendants. On October 27, 2011, the district court granted China Agritech's motion to

dismiss the *Dean* plaintiffs' Securities Act claims but denied its motion to dismiss the Exchange Act claims.

On January 6, 2012, the *Dean* plaintiffs moved for class certification on behalf of all persons or entities that had acquired China Agritech stock between November 12, 2009 and March 11, 2011. On May 3, 2012, the district court denied their motion. The court concluded that although the *Dean* plaintiffs had satisfied all four requirements of Rule 23(a), they failed to establish the predominance requirement of Rule 23(b)(3). Reliance is a required element for Section 10(b) securities fraud cases. The district court found that individual issues predominated because the *Dean* plaintiffs had failed to establish a fraud-on-the-market presumption of reliance. A fraud-on-the-market theory requires a showing of market efficiency, which, in the view of the district court, plaintiffs had not made. The court therefore held that plaintiffs had to establish individualized reliance to support their claims.

The *Dean* plaintiffs appealed the denial of certification under Rule 23(f). On August 8, 2012, we affirmed. *See Dean v. China Agritech, Inc.*, Case No. 12-80120 (9th Cir.), Dkt. No. 5. The *Dean* plaintiffs continued litigating their cases as individuals. They settled their individual claims on September 14, 2012. Based on the settlement, their individual claims were dismissed with prejudice on September 20, 2012.

## B. The *Smyth* Action

On October 4, 2012, three weeks after the *Dean* Action settled, Kevin Smyth filed an almost identical class-action complaint on behalf of the same would-be class against China

Agritech in federal District Court for the District of Delaware. *See Smyth v. Chang*, Case No.1:12-cv-01262-RGA (D. Del.) (the "*Smyth* Action"). The *Smyth* and *Dean* Action complaints differed only in that the *Smyth* Action alleged solely Exchange Act violations and did not name several of the defendants that had been named in the *Dean* Action. The *Smyth* Action was filed one year and eight months after the LM Report was published.

On December 7, 2012, following notification of the *Smyth* Action on Business Wire, pursuant to the PSLRA, eight shareholders sought appointment as lead plaintiff and approval of their selection of lead counsel. The *Smyth* Action was subsequently transferred to the Central District of California, where it was deemed related to the *Dean* Action and assigned to Judge Klausner (Case No. 2:13-cv-3008-RGK-PJW (C.D. Cal.)). On July 18, 2013, plaintiffs in the *Smyth* Action filed an amended complaint with several additional named plaintiffs. On August 5, 2013, the *Smyth* plaintiffs moved for class certification.

On September 26, 2013, the district court denied the motion. The court found that the *Smyth* plaintiffs' personal claims failed the typicality requirement of Rule 23(a)(3) because their prior relationship with named plaintiffs in the *Dean* Action subjected them to a claim preclusion defense that was not available against unnamed class members. The court further held that the *Smyth* plaintiffs and their counsel failed to meet the adequate representation requirement of Rule 23(a)(4). The court noted that plaintiffs had failed to modify their lead plaintiff certifications that had been signed twenty-nine months earlier in connection with the *Dean* Action, and had served only one defendant ten months after filing *Smyth*.

On January 8, 2014, the parties to the *Smyth* Action agreed to dismiss the action with prejudice as to the named plaintiffs.

## C.  The *Resh* Action

On June 30, 2014, Michael Resh filed a would-be class action against China Agritech and several individual defendants (the "*Resh* Action"). On September 4, 2014, Resh filed an amended complaint with several additional named plaintiffs. The *Resh* plaintiffs alleged violations of Sections 10(b) and 20(a) of the Exchange Act based on the same facts and circumstances, and on behalf of the same would-be class, as in the *Dean* and *Smyth* Actions. The case was assigned, like the others, to Judge Klausner.

On September 3, 2014, the CAGC Investor Group, comprised of investors in China Agritech—William Schoenke, Heroca Holding B.V., and Ninella Beheer B.V.—filed a motion for appointment as lead plaintiff and for approval of its selection of counsel for the proposed class. On September 22, 2014, China Agritech and one of the individual defendants, Charles Law, filed motions to dismiss the complaint on the theory that the *Resh* plaintiffs' would-be class action was time-barred under the Exchange Act's two-year statute of limitations. On October 17, 2014, the district court denied without prejudice the CAGC Investor Group's motion, deferring consideration until consideration of class certification ("October 2014 Order").

On December 1, 2014, the district court granted China Agritech's and Defendant Law's motions to dismiss without leave to amend ("December 2014 Order"). Plaintiffs had argued that their would-be class action was timely because

*American Pipe* tolled the statute of limitations during the pendency of the *Dean* and the *Smyth* actions. With tolling, 804 of the 1243 days that had elapsed since the release of the LM Report were subtracted, meaning that only 439 days counted towards the two-year statute of limitations. The district court disagreed. It concluded that while the Supreme Court in *American Pipe* and *Crown, Cork & Seal* held that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class, and that a class member may therefore file a separate individual action prior to the expiration of his or her own limitations period, the Supreme Court had not yet determined whether *American Pipe* allowed tolling for an entirely new class action based upon a substantially identical class. Relying principally on *Robbin v. Fluor Corp.*, 835 F.2d 213 (9th Cir. 1987), and *Catholic Social Services, Inc. v. INS*, 232 F.3d 1139 (9th Cir. 2000) (en banc), the district court concluded that the statute of limitations was tolled for the individual claims of the named plaintiffs in the *Resh* Action, but was not tolled for plaintiffs' would-be class action. In the view of the district court, a contrary ruling "would allow tolling to extend indefinitely as class action plaintiffs repeatedly attempt to demonstrate suitability for class certification on the basis of different expert testimony and/or other evidence."

On December 19, 2014, the *Resh* plaintiffs sought reconsideration, arguing that the court had denied class certification in the *Dean* and *Smyth* Actions due to issues related to the lead plaintiffs' suitability as class representatives rather than the claims' suitability for class treatment. On January 7, 2015, the district court dismissed the remaining defendants ("January 2015 Order"). On February 23, 2015, it denied plaintiffs' motion for

reconsideration ("February 2015 Order"), explaining that "Plaintiffs' class action claims were time-barred regardless of the grounds on which class certification was denied in the two earlier actions."

The *Resh* plaintiffs appealed, challenging the district court's October 2014, December 2014, January 2015, and February 2015 Orders.

## III.  Standard of Review

We review de novo a district court's order dismissing a suit on statute of limitations grounds. *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015).

## IV.  Jurisdiction

We have jurisdiction under 28 U.S.C. § 1291. Defendants argue that the orders are not appealable final orders because the district court indicated that plaintiffs' individual claims could proceed. We disagree. The district court stated, "Plaintiffs are not prevented from filing a complaint asserting individual, rather than class action, claims . . . if they so choose." However, this statement did not affect the finality of the court's dismissal "without leave to amend" of the class action complaint that plaintiffs had filed. An invitation to file a complaint in a separate individual suit does not render non-appealable the district court's dismissal.

Defendants also assert that under Federal Rule of Appellate Procedure ("FRAP") 4(a)(7)(A)(ii), plaintiffs were required to wait 150 days after the district court's December 2014 and February 2015 orders before they appealed because the district court's judgment had not been set forth in a

separate document, as required under Federal Rule of Civil Procedure ("Rule") 58(a). However, under FRAP 4(a)(7)(B), "[a] failure to set forth a judgment or order on a separate document when required by . . . Rule 58(a) does not affect the validity of an appeal from that judgment or order." "[N]either the Supreme Court nor this court views satisfaction of Rule 58 as a prerequisite to appeal." *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1140 (9th Cir. 2003). Because the district court's order was a full adjudication of the issues that clearly evidenced its intention that the order be final, appellate jurisdiction is proper. *See Nat'l Distrib. Agency v. Nationwide Mut. Ins. Co.*, 117 F.3d 432, 433 (9th Cir. 1997).

## V. Discussion

We must decide whether the would-be class action brought by the *Resh* plaintiffs is time-barred. It is undisputed that the earlier *Dean* and *Smyth* Actions were timely. It is also undisputed that, under *American Pipe* and *Crown, Cork & Seal*, the statute of limitations for the individual claims of would-be class members in the *Dean* and *Smyth* Actions was tolled during the pendency of both of those actions. That is, there is no time bar to individual claims brought by plaintiffs who were unnamed class members in the *Dean* and *Smyth* Actions, whether brought as separate or joined claims. The question before us is whether plaintiffs' would-be class action, based on those same claims, is time-barred.

### A. *American Pipe* and *Crown, Cork & Seal*

The Supreme Court has twice addressed tolling issues arising out of the dismissal of a would-be class action when no class has been certified. In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the Court held that

unnamed members of an uncertified class could intervene as individual plaintiffs in the individual suit that remained even if the statutory limitations period had passed. *Id.* at 550–56. According to the Court, "the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 553. The Court characterized its tolling rule as serving policies underlying statutes of limitations as well as class actions. Recognizing that limitations periods serve "[t]he policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights,'" *id.* at 554, the Court concluded that such policies would be vindicated when a named plaintiff "commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 554–55. Not permitting tolling would frustrate the goal of Rule 23 to promote economy in litigation because, absent tolling, "[p]otential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable." *Id.* at 553.

In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the Supreme Court extended *American Pipe* to permit tolling not only for individual intervention in the named plaintiffs' original suit, but also for individual filing of entirely new suits. The Court wrote that many of "the same inefficiencies [discussed in *American Pipe*] would ensue if *American Pipe*'s tolling rule were limited to permitting putative class members to intervene after the denial of class certification." *Id.* at 350. Specifically, if the statute of limitations for new individual claims were not tolled, "[t]he

result would be a needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid." *Id.* at 351. Because the commencement of a class suit already "put[s] defendants on notice of adverse claims," the goals underlying statutes of limitations would not be undermined by a broader tolling rule. *Id.* at 352. The Court concluded, "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Id.* at 354.

### B. *Catholic Social Services* and Later Cases

Under *American Pipe* and *Crown, Cork & Seal*, it is clear that the individual claims of the would-be class members in the *Resh* Action have been tolled during the pendency of earlier class actions. Those class members may intervene in existing individual suits, or may bring entirely new individual suits. Plaintiffs bringing new suits may sue either separately or jointly. *American Pipe* and *Crown, Cork & Seal* leave open the question whether such plaintiffs may bring a new suit as a class action.

In a short opinion published thirty years ago, we held that "the pendency of a class action [does not] toll[] the applicable statutes of limitation for a subsequently filed class action." *Robbin v. Fluor Corp.*, 835 F.2d 213, 213 (9th Cir. 1987). Relying principally upon a Second Circuit opinion, we concluded that "extend[ing] tolling to class actions 'tests the outer limits of the *American Pipe* doctrine and . . . falls beyond its carefully crafted parameters into the range of abusive options.'" *Id.* at 214 (citing *Korwek v. Hunt*,

827 F.2d 874, 879 (2d. Cir. 1987)).  In *Korwek*, our sister circuit had held that "the tolling doctrine enunciated in *American Pipe* does not apply to permit a plaintiff to file a subsequent class action following a definitive determination of the inappropriateness of class certification."  827 F.2d at 879.  Its rationale was that "[t]he Supreme Court in *American Pipe* and *Crown, Cork* certainly did not intend to afford plaintiffs the opportunity to argue and reargue the question of class certification by filing new but repetitive complaints." *Id.*

We modified *Robbin* in 2000.  In *Catholic Social Services, Inc. v. INS*, 232 F.3d 1139 (9th Cir. 2000) (en banc), the district court had certified a class, but an intervening change in the law eliminated subject matter jurisdiction over the claims of the named plaintiffs.  *Id.* at 1143–44.  New plaintiffs then brought a second class action based on the same underlying facts against the same institutional defendants.  *Id.* at 1144.  The question before us was whether the pendency of the prior class action tolled the statute of limitations for the second action.  *Id.* at 1145.  We held that it did.  *Id.* at 1149.  In so holding, we clarified the analytic structure in which the *American Pipe* tolling analysis applies to future class actions:

> There is no dispute that if members of the class . . . had filed individual actions after the dismissal of their class action, the statute of limitations would have been tolled for those individual actions. . . .  The only question in this case is whether those same plaintiffs should be permitted to aggregate their individual actions into a class action.  *Strictly speaking, this is not a statute of limitations*

*question at all. It is, rather, a question of whether plaintiffs whose individual actions are not barred may be permitted to use a class action to litigate those actions.*

*Id.* at 1147 (emphasis added).

Defendants read our opinion in *Catholic Social Services* as denying tolling for plaintiffs in certain categories of class action denials. They rely principally on a passage in which we wrote, "If class action certification had been denied in [an earlier case], and if plaintiffs in this action were seeking to relitigate the correctness of that denial, we would not permit plaintiffs to bring a class action." *Id.* Two of our sister circuits may have read *Catholic Social Services* similarly. *See Yang v. Odom*, 392 F.3d 97, 107 (3d Cir. 2004) ("*Catholic Social Services* can be read as authority for our holding that class claims should be tolled where the district court denies class certification based on deficiencies of a class representative, and not on the validity of the class itself."); *Great Plains Tr. Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 997 (8th Cir. 2007) ("Whether the *American Pipe* rule applies to subsequent class actions . . . depends on the reasons for the denial of certification of the predecessor action.").

This is a misreading of *Catholic Social Services*. We did indeed write that "we would not permit plaintiffs to bring a class action" if they sought to serially re-litigate a previous denial of certification. 232 F.3d at 1147. However, we did not write that the availability of a subsequent class action depended on general tolling principles. Rather, its availability depended on the operation of preclusion and preclusion-related principles. *See id.* For example, if

plaintiffs in *Catholic Social Services* had been named plaintiffs in the earlier suit, if an issue relating to the propriety of the class action had been resolved against them, if their earlier suit had been dismissed with prejudice based on that ruling, and if plaintiffs had then sought to bring a new class action raising that same issue, they would have been barred by issue preclusion from raising that issue.

Three recent Supreme Court decisions have confirmed this view. First, in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), the Court rejected an argument by defendant Allstate that only certain categories of claims are eligible for class treatment under Rule 23. The Court wrote:

> There is no reason . . . to read Rule 23 as addressing only whether claims made eligible for class treatment by some *other* law should be certified as class actions. Allstate asserts that Rule 23 neither explicitly nor implicitly empowers a federal court "to certify a class in each and every case" where the Rule's criteria are met. But that is *exactly* what Rule 23 does[.]

*Id.* at 399 (emphases in original and internal citation omitted). *Shady Grove* directs us, for purposes of class certification, to look only to the criteria of Rule 23 and not to "some other law." There is nothing in the certification criteria of Rule 23 that tells us to look to whether the statute of limitation has, or has not, been tolled. That is, the statute of limitations is not part of Rule 23 but is, instead, "some other law."

After *Shady Grove*, the Seventh Circuit explicitly adopted our general approach in *Catholic Social Services* in treating the issue of successive would-be class actions as an issue of preclusion rather than tolling. In *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560 (7th Cir. 2011), the court held that the overarching inquiry in determining whether prior class actions can toll future class actions is "not the statute of limitations or the effects of tolling, but the preclusive effect of a judicial decision in the initial suit applying the criteria of Rule 23." *Id.* at 563. "To the extent that [another court] may believe that Rule 23 must be set aside when a suit's timeliness depends on a tolling rule, that view cannot be reconciled with the Supreme Court's later decision in *Shady Grove* . . . , which holds that Rule 23 applies to all federal civil suits, even if that prevents achieving some other objective that a court thinks valuable." *Id.* at 564.

Second, in *Smith v. Bayer Corp.*, 564 U.S. 299 (2011), the Court refused to allow a federal district court to enjoin a state court from certifying a class. The federal court had denied class certification of a class in a would-be class action against Bayer. *Id.* at 304. A parallel would-be class action was pending in state court, brought by different named plaintiffs than the named plaintiffs in federal court. *Id.* at 303. After the federal court ruled, it enjoined the state court from certifying the class in the case before that court, relying on the "relitigation exception" to the Anti-Injunction Act, 28 U.S.C. § 2283. *Id.* at 304–05. The Supreme Court reversed, pointing out, *inter alia*, that the named plaintiffs in the state court suit had been unnamed members of the uncertified class in federal court, and that they had thus never been made parties to the federal court suit. *Id.* at 316–18. In that circumstance, there was no basis to apply formal

preclusion principles against them, and thus no basis to enjoin the state court from certifying the class action. *Id.*

The Court in *Smith* acknowledged Bayer's argument that "serial relitigation of class certification" was unfair to defendants, and that defendants "would be forced in effect to buy litigation peace by settling." *Id.* at 316 (internal quotation marks omitted). The Court responded that Bayer's "form of argument flies in the face of the rule against nonparty preclusion." *Id.* Its answer to Bayer's concern was that traditional principles of *stare decisis* and comity, combined with the possibility of removal under the Class Action Fairness Act or consolidation by the Panel on Multidistrict Litigation, were adequate to the task of protecting defendants. *Id.* at 316–18. Though the question of sequential class action litigation in two or more federal courts, as distinct from such litigation in federal and state court, was not presented in the case before it, the Court nonetheless addressed that question. The troublesome case, of course, is one in which the plaintiffs were unnamed plaintiffs in an earlier uncertified class action in federal court and were therefore not subject to issue preclusion, and in which the plaintiffs later seek to bring an identical or substantially similar would-be class action in federal court. With respect to such a case, the Court wrote, "[W]e would expect federal courts to apply principles of comity to each other's class certification decisions when addressing a common dispute." *Id.* at 317.

Two years later, the Sixth Circuit had occasion to apply both *Shady Grove* and *Smith*. In *Phipps v. Wal-Mart Stores, Inc.*, 792 F.3d 637 (6th Cir. 2015), with respect to tolling, the Sixth Circuit cited and followed the Seventh Circuit's decision in *Sawyer*. *Id.* at 652. With respect to preclusion,

the court relied on *Smith*. Wal-Mart, like Bayer in *Smith*, objected that allowing repeated litigation of class action certification questions by different named plaintiffs would force defendants "to settle to buy peace." *Id.* at 653. The court responded that Wal-Mart's concerns "need not bar legitimate class action lawsuits or distort the purposes of *American Pipe* tolling. Instead, we follow the Supreme Court's lead and trust that existing principles in our legal system, such as *stare decisis* and comity among courts, are suited to and capable of addressing these concerns." *Id.*

Third and finally, in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046–48 (2016), the Supreme Court considered whether class action plaintiffs could use statistical sampling evidence to prove liability to a class. The Court held that they could, reasoning that "[i]n a case where representative evidence is relevant in proving a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class." *Id.* at 1046. To hold otherwise would be to "ignore the Rules Enabling Act's pellucid instruction that use of the class device cannot 'abridge . . . any substantive right.'" *Id.* (quoting 28 U.S.C. § 2072(b)). We recognize that for purposes of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and the Rules Enabling Act, statutes of limitation occupy a no-man's land between substance and procedure. *See Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 532–34 (1949) (in a suit based on state-law cause of action applying state tolling rule rather than Federal Rule of Civil Procedure 3); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 748–53 (1980) (same); *West v. Conrail*, 481 U.S. 35, 37–40 (1987) (in a suit based on a federal-law cause of action applying Rule 3). We therefore do not regard the Court's reasoning in *Tyson Foods* as compelling a holding that the Rules Enabling

Act requires that the statute of limitations apply the same way in both individual and class actions. But *Tyson Foods*, when read in combination with *Shady Grove* and *Smith*, nonetheless reinforces our conclusion that the statute of limitations does not bar a class action brought by plaintiffs whose individual actions are not barred.

### C. Plaintiffs' Would-be Class Action Is Not Time-barred

We conclude, based on *American Pipe* and *Crown, Cork & Seal*, read in the light of *Shady Grove*, *Smith* and *Tyson Foods*, that permitting future class action named plaintiffs, who were unnamed class members in previously uncertified classes, to avail themselves of *American Pipe* tolling would advance the policy objectives that led the Supreme Court to permit tolling in the first place. The rule creates no unfair surprise to defendants because the pendency of a prior class suit has already alerted them "not only [to] the substantive claims being brought against them, but also [to] the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe*, 414 U.S. at 554–55. The rule also promotes economy of litigation by reducing incentives for filing duplicative, protective class actions because "[a] putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations." *Crown, Cork & Seal*, 462 U.S. at 350–51.

We further conclude, based on *Smith*, that to the degree that our conclusion may be thought likely to lead to abusive filing of repetitive class actions, the current legal system is adequate to respond to such a concern. First, if it is clear that a proposed class is not viable under Rule 23, as evidenced by

an earlier federal court decision, potential future plaintiffs (or, more precisely, their attorneys) will have little to gain from repeatedly filing new suits. Attorneys who are going to be paid on a contingency fee basis, or in some cases based on a fee-shifting statute, at some point will be unwilling to assume the financial risk in bringing successive suits. Second, ordinary principles of preclusion and comity will further reduce incentives to re-litigate frivolous or already dismissed class claims, and will provide a ready basis for successor federal district courts to deny class action certification.

In light of the above, we conclude that plaintiffs' class action complaint is not time-barred. Plaintiffs' individual claims were tolled under *American Pipe* and *Crown, Cork & Seal* during the pendency of the *Dean* and *Smyth* Actions. So long as they can satisfy the criteria of Rule 23, and can persuade the district court that comity or preclusion principles do not bar their action, they are entitled to bring their timely individual claims as named plaintiffs in a would-be class action.

## Conclusion

We hold that plaintiffs' class action claims are timely. Because we so hold, we do not reach plaintiffs' additional arguments. We reverse the district court's order of dismissal and remand for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED.**