**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2368
_____

CHRISTOPHER BLAKE; JAMES ORKIS, individually and
on behalf of all others similarly situated,
Appellants

v.

JP MORGAN CHASE BANK NA; CHASE BANK USA
NA; JP MORGAN CHASE & CO; CROSS COUNTRY IN-
SURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-13-cv-06433)
District Judge: Honorable Lawrence F. Stengel (Retired)
_____

Argued March 20, 2019

Before: SHWARTZ, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: June 19, 2019)
_____

Natalie Lesser
Donna Siegel Moffa [ARGUED]
Terence S. Ziegler
Kessler Topaz Meltzer & Check
280 King of Prussia Road
Radnor, PA 19087
  *Counsel for Appellant*

Jonathan S. Massey [ARGUED]
Massey & Gail
1000 Maine Avenue, S.W.
Suite 450
Washington, DC 20024

Matthew P. Previn
Buckley
1133 Avenue of the Americas
Suite 3100
New York, NY 10036
  *Counsel for Appellee*

Brian T. Burgess
Thomas M. Heffernon
David L. Permut
Matthew S. Sheldon
Goodwin Proctor
901 New York Avenue, N.W.
Suite 900 East
Washington, DC 20001
  *Counsel for Amicus Appellee*

---

OPINION OF THE COURT

---

BIBAS, *Circuit Judge*.

Statutes of limitations can be tricky. What events trigger them may present thorny questions. And when courts may toll them can involve judgment calls. Because of the way that Christopher Blake and James Orkis have brought their class action, this case presents both kinds of issues. And they need to win on both to make their suit timely.

In 2005 and 2006, Blake and Orkis took out mortgages from JP Morgan to buy homes. Then in 2013, they filed a class action against JP Morgan under the Real Estate Settlement and Procedures Act, alleging a scheme to refer homeowners to mortgage insurers in exchange for streams of kickbacks. But the Act has a one-year statute of limitations that runs from the date of the violation. 12 U.S.C. §2614. So Blake and Orkis need to bridge the gap from when they closed their mortgages in 2005 and 2006 to when they sued in 2013.

They raise two theories, each of which bridges only half the gap. First, Blake and Orkis argue that each kickback separately violates the Act and has its own limitations period. In other words, they argue that the Act follows the separate-accrual rule. JP Morgan disagrees, arguing that the Act's statute of limitations runs only from the mortgage closing, not from each later kickback. But the Act's plain text makes each kickback a violation, so the limitations period accrues separately from the date of each kickback.

That theory gets them only halfway there. The kickbacks ended more than a year before they sued, so the Act's one-year limitations period would still bar their claims. To make their 2013 suit timely, Blake and Orkis next try to piggyback on a different class action filed in 2011 that raised the same claims against JP Morgan. As members of that putative class, they say that we should toll the limitations period under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). But in *China Agritech, Inc. v. Resh*, the Supreme Court reasoned that a timely class action should never toll other class actions under *American Pipe*. 138 S. Ct. 1800 (2018). Blake and Orkis try but fail to distinguish *China Agritech*. So they are not entitled to *American Pipe* tolling, and their suit is untimely. We will thus affirm.

## I. BACKGROUND

### A. Blake and Orkis's allegations

1. *The mortgage insurance market*. Before banks will enter into a home mortgage, they usually expect a 20% down payment. But many home buyers cannot pay that much up front. Banks are willing to lend to these buyers on a condition: that they buy mortgage insurance to protect against default.

The mortgage insurers, in turn, often reinsure these mortgages. Typically, they assign part of the risk to a reinsurer in exchange for giving up part of the insurance premiums. Ideally, reinsurance thus spreads risk and lets people buy homes who otherwise could not.

2. *Blake and Orkis's claims*. But Blake and Orkis allege that this system was rife with abuse. Each bought a home and took out a mortgage from JP Morgan. Because they paid less

4

than 20% up front, they had to buy mortgage insurance. JP Morgan referred each of them to specific mortgage insurers, who then reinsured with Cross Country Insurance.

But Cross Country is a subsidiary of JP Morgan. So according to Blake and Orkis, this was a classic kickback scheme: JP Morgan referred home buyers to mortgage insurers in exchange for kickbacks, funneled through its subsidiary as insurance premiums. Any reinsurance, they claim, was just a cover for the kickback scheme.

Federal regulators apparently agreed. After the financial crisis, they clamped down on these alleged practices, getting consent decrees against several leading mortgage reinsurers that banned these captive-reinsurance arrangements for ten years. These decrees, however, did not come in time for Blake and Orkis. They both claim that their mortgage insurers paid kickbacks through 2012 and 2013.

3. *The Real Estate Settlement and Procedures Act.* Blake and Orkis claim that the kickbacks violate 12 U.S.C. §2607 of the Real Estate Settlement and Procedures Act (RESPA or the Act), 12 U.S.C. §§2601–17. The Act is designed to eliminate kickbacks and other fees that raise the cost of "settlement services" related to mortgage closings, like mortgage insurance. *Id.* §§2601(b)(2), 2602(3). So it bans giving or receiving "any fee, kickback, or thing of value pursuant to any agreement or understanding" that either party will refer these services to the other. *Id.* §2607.

This section of the Act has a one-year statute of limitations. *Id.* §2614. And that limitations period runs "from the date of

the occurrence of the violation." *Id.* This case turns in part on defining the violation that triggers the statute of limitations.

## B. Procedural history

1. *The 2011* Samp *lawsuit.* Blake and Orkis were not the first to make these claims. In 2011, a group of plaintiffs filed a class-action suit against JP Morgan in California, bringing the same claims as Blake and Orkis. *Samp v. JP Morgan Chase Bank, N.A.*, No. EDCV 11-1950, 2013 WL 1912869, at \*2 (C.D. Cal. May 7, 2013). Though Blake and Orkis were not named plaintiffs, they belonged to *Samp*'s putative class of all those who took out mortgages from JP Morgan in or after 2004. But the District Court in California dismissed that case as untimely in May 2013. *Id.* at \*5, \*10. The *Samp* plaintiffs appealed.

In November 2013, several of the *Samp* plaintiffs' lawyers changed their litigation strategy. They filed a new class action, with Blake and Orkis as the named plaintiffs, in federal district court in Pennsylvania. The very next day, they asked the Ninth Circuit to dismiss their *Samp* appeal. Two days after that, the court granted that motion and put an end to *Samp*.

2. *This lawsuit.* Blake and Orkis picked up where *Samp* left off. They too sought to represent a class of those who took out mortgages from JP Morgan in or after 2004. But they themselves had taken out their mortgages in 2005 and 2006, at least seven years before they filed their complaint in 2013. So JP Morgan moved to dismiss their suit as barred by the Act's one-year statute of limitations. Blake and Orkis had to bridge at least a seven-year gap.

6

They tried to bridge it in two ways. First, they claimed that the Act makes each kickback a violation with its own limitations period—a separately accruing wrong. And they claimed that their mortgage insurers paid a kickback to JP Morgan (through Cross Country) each time they paid an insurance premium. They continued to pay these premiums for years after their mortgages closed. So under that theory, their suit would be timely up to one year after the last kickback.

But Blake and Orkis concede that they had paid no premiums in the year before their complaint. The statute of limitations would thus have expired in the year or two before they filed their own suit in 2013.

Blake and Orkis's lawyers, however, filed *Samp* in December 2011. So second, Blake and Orkis argued that the filing of *Samp* tolled the limitations period for their claims. They reasoned that they were members of *Samp*'s putative class and were bringing the same claims as in *Samp*. And because *Samp* continued until November 2013, they claimed that *American Pipe* tolling would extend their limitations period until then and make their suit timely.

In other words, Blake and Orkis needed both theories to make their suit timely. They needed the separate-accrual rule to justify starting the limitations period for some kickbacks at the end of 2010. And they needed *American Pipe* tolling to span the period from 2011 to 2013, when they filed their own suit.

The District Court agreed with the first theory, but not the second. *Blake v. JP Morgan Chase Bank, N.A.*, No. 13-6433,

7

2018 WL 1518613, at \*4-8 (E.D. Pa. Mar. 28, 2018). It held that each kickback is a separately accruing wrong with its own limitations period. *Id.* at \*4-5. But it also held that *American Pipe* tolling does not apply to a second class action filed before the end of the first one. *Id.* at \*7-8. So the District Court held that the suit was untimely and dismissed it.

Blake and Orkis appealed. We review the dismissal of a complaint de novo, accepting the plaintiffs' well-pleaded allegations as true. *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001).

## II. UNDER RESPA, THE LIMITATIONS PERIOD FOR EACH KICKBACK ACCRUES SEPARATELY

Blake and Orkis first need a theory to span the time from at least 2006 to 2010. There are two possibilities: the separate-accrual rule and the continuing-violations doctrine. Blake and Orkis invoke the separate-accrual rule, claiming that each kickback is a discrete violation with its own limitations period.

JP Morgan replies that the only alleged violations were at the mortgage closings in 2005 and 2006. But much of JP Morgan's argument targets the continuing-violations doctrine, largely ignoring the separate-accrual rule. So the parties argue past each other. And the text of the Act is clear: each kickback is a separately accruing violation.

### A. We can decide this question

But first, Blake and Orkis argue that we cannot even reach this issue because they did not raise it on appeal and JP Morgan did not cross-appeal. The District Court held that the separate-

8

accrual rule applied, so Blake and Orkis appealed only the *American Pipe* issue. And without an appeal or cross-appeal, we may not modify a judgment or change the parties' rights. *Morley Const. Co. v. Md. Cas. Co.*, 300 U.S. 185, 191 (1937).

But we can affirm for any reason in the record. *Id.*; *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 205 (3d Cir. 2001). And both the separate-accrual rule and *American Pipe* tolling go to the same basic question: is Blake's and Orkis's suit timely? JP Morgan says no, because there were no new wrongs after 2006. If we agreed, then we would affirm without changing the judgment or altering the parties' rights. *Cf. Connell v. Trs. of the Pension Fund of the Ironworkers Dist. Council of N. N.J.*, 118 F.3d 154, 156-158 (3d Cir. 1997) (dismissing suit as time-barred without a cross-appeal). So we can reach this question without a cross-appeal.

### B. The Act's plain text provides that the limitations period accrues separately for each kickback

1. *Separate accrual, not continuing violations.* We must decide which actions trigger the statute of limitations: the closings or the individual kickbacks. The "standard rule" is that a federal cause of action accrues, and the limitations period starts to run, when and only when "the plaintiff can file suit and obtain relief" for that particular wrong. *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997). "Congress has been operating against the background rule recognized in *Bay Area Laundry* for a very long time." *TRW Inc. v. Andrews*, 534 U.S. 19, 38 (2001) (Scalia, J., concurring in the judgment). We have no reason to depart from it here.

A corollary of the standard rule is the separate-accrual rule. In other words, "when a defendant commits successive violations, the statute of limitations runs separately from each violation." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). The separate-accrual rule governs laws that ban discrete wrongs, like copying a copyrighted work or defrauding investors. *Id.*; *see Gabelli v. SEC*, 568 U.S. 442, 447-48 (2013). Because each act violates the law on its own, each act separately triggers its own limitations period. *Petrella*, 572 U.S. at 671. And because each violation is its own claim, plaintiffs can sue only for those claims that were timely when they filed suit. *Id.* at 671-72.

But not all wrongs are discrete wrongs. Some wrongs are diffuse and comprise many acts over a period of time, like hostile work environments. *E.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). These are called continuing violations. No single act may be enough to make out a claim. So the statute of limitations runs from the last act of the illegal conduct. *Id.* at 118. And though the last act triggers the statute of limitations, a plaintiff challenging a continuing violation may sue for all acts that make out his claim, even acts that predate the limitations period. *See id.* at 122.

So which rule applies depends on the wording of the law. If the law forbids a discrete act, as most do, then the separate-accrual rule governs each act. But if it forbids diffuse conduct, comprising many acts at different times, then the continuing-violation doctrine applies. *Petrella*, 572 U.S. at 671-72 nn.6 & 7.

The parties argue past each other about which doctrine applies to Blake and Orkis's case. Blake and Orkis say that this is a separate-accrual case. But JP Morgan argues that this is a continuing-violations case—while denying that this doctrine applies and saying that the only violation was at closing.

2. *The plain text.* The separate-accrual rule applies here because the Act forbids the discrete act of giving or taking a kickback.

Like many laws, the Act's one-year statute of limitations runs "from the date of the occurrence of the violation." 12 U.S.C. § 2614. So when the limitations period starts turns on what the violation is. Section 2607(a) in turn bans "giv[ing]" or "accept[ing] any fee, kickback, or thing of value pursuant to any agreement or understanding … that business incident to or a part of a real estate settlement service … shall be referred to any person."

As the text says, the precise conduct that violates the Act is giving or accepting a kickback. The agreement to make referrals is only an attendant circumstance. An agreement must exist at the time of the kickback, but an agreement on its own does not violate § 2607(a). So a party violates the Act anew each time it takes the discrete act of giving or receiving a kickback under an agreement to make referrals.

JP Morgan rightly insists that the continuing-violations doctrine does not apply here. But that is beside the point. The Act does not require Blake and Orkis to show a diffuse scheme of illegal conduct, encompassing many kickbacks—it forbids even a single a kickback for a single referral. 12 U.S.C.

11

§2607(a). So the separate-accrual rule applies, giving each discrete kickback its own limitations period.

3. *JP Morgan's textual arguments.* JP Morgan disagrees. It claims that one can violate the Act only at closing, when one agrees to the stream of kickbacks. It offers many textual and policy arguments. None has merit.

First, JP Morgan argues that the Act's statute of limitations runs from the date of the "violation," singular. *Id.* §2614. So it reasons that the Act forbids only a single act like agreeing to kickbacks, not receiving individual kickbacks repeated over time. But the reference to a single "violation" changes nothing. The Act forbids even a single kickback, and each kickback is a singular violation.

Second, JP Morgan claims that the Act focuses on mortgage closings to reduce the costs of settlement services. *Id.* §2601. According to JP Morgan, this focus means that only actions at closing violate the Act. But the Act's stated purpose is "*the elimination of kickbacks or referral fees* that tend to increase unnecessarily the costs of certain settlement services." *Id.* §2601(b)(2) (emphasis added). So the Act focuses on banning any kickback for referring settlement services, and giving or taking that kickback violates the Act's text. *See id.* §2607(a). Those kickbacks, whether paid at closing or later, could increase the cost of settlement services for everyone.

Third, JP Morgan says the Act forbids giving or taking a "thing of value" for referrals, which includes the agreement at closing for kickbacks. *Id.* §2607(a). We need not decide whether an agreement to provide kickbacks would amount to a

separate violation of the Act. *Cf. Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 360 (5th Cir. 2003) (rejecting an attempt to split one discrete kickback into separate violations). Even if an agreement for kickbacks did qualify, so would the actual kickbacks. And the statute does not require that the kickback be paid at closing. The one-year limitations period runs separately from the giving or taking of each discrete kickback, whether paid at closing or later.

4. *JP Morgan's policy arguments*. Because the separate-accrual rule governs, JP Morgan's policy arguments also lack merit. For example, it fears that letting Blake and Orkis sue will extend the statute of limitations for too long. It frets that this lawsuit will prompt others to wait before suing, letting memories fade and evidence decay. And it worries that restarting the statute of limitations for each kickback will treat like plaintiffs unalike, depending on how the defendants structured their conduct.

But these are no answer to the separate-accrual rule. If a defendant fears indefinite liability, it need only cease its illegal conduct. Parties still have incentives to sue promptly, because the only kickbacks they may challenge are those given or taken within one year of their lawsuits. *See Petrella*, 572 U.S. at 671-72. And whether one plaintiff has longer to sue than another depends only on whether a defendant has continued to harm him.

5. *Precedent supports our holding.* Finally, JP Morgan insists that both the Fifth Circuit's precedent and our own require pegging the statute of limitations to the time of closing. *See Cunningham v. M&T Bank Corp.*, 814 F.3d 156 (3d Cir. 2016);

13

*Snow v. First Am. Title Ins. Co.*, 332 F.3d 356 (5th Cir. 2003). But both cases accord with our holding today.

We never resolved this issue in *Cunningham* because the parties treated the closing date as the accrual date. In that case, the plaintiffs recounted the same scheme as Blake and Orkis: that their mortgage insurers had given their banks a series of kickbacks for referrals. *Cunningham v. M&T Bank Corp.*, No. 1:12-cv-1238, 2015 WL 539761, at *1 (M.D. Pa. Feb. 10, 2015). We said in passing that the statute of limitations ran from "the closing of the loan." *Cunningham*, 814 F.3d at 160. But the *Cunningham* plaintiffs had conceded that they had filed outside the statute of limitations. 2015 WL 539761, at *3. They argued only for equitable tolling. So we had no reason to interpret the Act's statute of limitations.

And the Fifth Circuit's decision in *Snow* supports our own. JP Morgan reads *Snow* as laying down a rule that the Act's statute of limitations runs only from the mortgage closing. But *Snow* does not say that. In that particular case, the limitations period ran from the date of closing because that was the only date of a transfer—a different kind of violation from the kickback scheme alleged here. *Snow*, 332 F.3d at 359. And *Snow* acknowledged that in other cases, buyers could pay for a settlement service "at a time other than the closing." *Id.* at 359 n.3. In that case, the trigger for the limitations period "presumably would be the date of payment, not the unrelated closing." *Id.* So each kickback has its own limitation period.

6. *Blake and Orkis have alleged separate violations.* Because the Act follows the separate-accrual rule, Blake and Orkis's suit would have been timely in 2011. They claim that

14

JP Morgan accepted kickbacks until at least the end of 2010. And they allege that JP Morgan agreed to refer business to their mortgage insurers. So they have alleged that JP Morgan violated the act in 2010 by taking kickbacks under an agreement to refer settlement services. Their suit would thus have been timely in late 2011, but only for kickbacks paid in late 2010.

### III. UNDER *AMERICAN PIPE*, A PENDING CLASS ACTION TOLLS THE TIME ONLY FOR PUTATIVE CLASS MEMBERS' INDIVIDUAL CLAIMS—NOT THEIR CLASS CLAIMS

Next, Blake and Orkis must bridge the time from 2011 (when *Samp* was filed) to 2013 (when they filed their own class action). To do that, they seek *American Pipe* tolling because they were members of the putative *Samp* class. But in *China Agritech*, the Supreme Court reasoned that *American Pipe* tolling is available only for individual claims, not for class claims. On appeal, Blake and Orkis raise only one theory to save their case: that *China Agritech* does not apply because they filed their class claims before *Samp* ended. But that distinction makes no difference. So their suit is untimely.

### A. *China Agritech* limited *American Pipe* tolling to individual claims

1. American Pipe *tolling explained.* The Supreme Court has long held that a timely class action tolls the claims of all putative class members. *American Pipe*, 414 U.S. at 552-53; *see Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983). The Court has given two main reasons for its holding. First, tolling is needed to avoid duplicative lawsuits. *American Pipe*, 414 U.S. at 551, 553-54. Putative class members should be able

to wait on the sidelines pending class certification, hoping for a victory in the class action. Without tolling, they might try to protect their claims by flooding courts with individual lawsuits—"precisely the multiplicity of activity which Rule 23 was designed to avoid." *Id.* at 551.

Second, tolling is fair to both sides. *Id.* at 554. Statutes of limitations encourage plaintiffs to sue promptly and prevent surprises to defendants. But putative class members reasonably expect the class action to protect their claims. And the class action gives defendants ample notice.

2. American Pipe *tolling does not apply to new class actions.* The Supreme Court has since limited *American Pipe* tolling to individual claims. Courts may not toll new class actions just because there was a prior timely class action. *China Agritech*, 138 S. Ct. at 1811. Doing so would cause problems in three ways.

First, tolling new class actions would breed duplicative lawsuits instead of reducing them. *Id.* at 1807. Plaintiffs could file new class actions after class certification was denied, undermining Rule 23's instruction to resolve class certification "early." *Id.* (quoting Fed. R. Civ. P. 23(c)(1)(A)). Instead, they should file class actions "at the outset of the case." *Id.* This lets courts resolve up front both whether to grant class certification and which plaintiff will lead the class, once and for all.

Second, tolling new class actions would be inequitable. A would-be class claimant cannot say that he was hoping the first class action would protect his claim, because he could have

16

sought lead-plaintiff status or brought his own claim. *See id.* at 1808. He would have "slept on [his] rights." *Id.*

And last, tolling new class actions would encourage repetitive claims. *Id.* at 1809. For new individual claims, any tolling is "finite, extended only by the time the class suit was pending." *Id.* But new class actions would re-toll all class actions, letting class claimants stack their claims forever.

So "the rule [the Court] adopt[ed]" was unequivocal: "Time to file a class action falls outside the bounds of *American Pipe*." *Id.* at 1811.

**B. It does not matter that *Samp* was pending when Blake and Orkis sued**

Blake and Orkis try to distinguish their case from *China Agritech*. They note that *China Agritech*'s posture was like *American Pipe*'s: the first class action had fully ended when the new plaintiffs filed their own action. *See Resh v. China Agritech, Inc.*, 857 F.3d 994, 998 (9th Cir. 2017), *rev'd by China Agritech*, 138 S. Ct. 1800. But Blake and Orkis filed their suit while *Samp* was pending on appeal. So they say that their case is distinguishable.

But that is a distinction without a difference. To support it, they selectively quote a few sentences and phrases from *China Agritech*. For example, that case does say that Rule 23 "permit[s] district courts to take account of multiple class-representative filings." 138 S. Ct. at 1807. And it explains that "multiple filings may aid a district court in determining, early on, whether class treatment is warranted." *Id.* at 1811. But in context, those statements mean only that plaintiffs should file their

17

class actions and sort out lead-plaintiff status within the statute of limitations. They presuppose "[m]ultiple *timely* filings." *Id.* (emphasis added).

Elsewhere, *China Agritech* is clear and unequivocal: courts may not toll new class actions under *American Pipe*, period. *E.g.*, *id.* at 1811; *see also In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 915 F.3d 1, 16-17 (1st Cir. 2019) (suggesting this view of *China Agritech*); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 609-10 (3d Cir. 2018) (same). For example, *China Agritech* "h[e]ld that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action." 138 S. Ct. at 1806. It explained that "Rule 23 evinces a preference for preclusion of untimely successive class actions." *Id.* at 1807. So "the Rules do not offer … a reason to permit plaintiffs to exhume failed class actions by filing new, untimely class claims." *Id.* at 1811.

*China Agritech* thus recognized that district courts can deal with multiple filings and that additional filings may inform whether to certify a class. But that was all in the context of timely class filings. The Court meant only that class claimants should file their claims within the statute of limitations so that courts may decide up front whether to certify classes and which plaintiffs should lead them. It never suggested that courts should toll overlapping class actions.

And Blake and Orkis's distinction is at odds with *China Agritech*'s logic. Tolling new class actions filed while the first one was pending would encourage more plaintiffs to seek second bites at the apple. Those plaintiffs also would have slept

18

on their rights. This would all undermine Rule 23's instruction to resolve class certification early on. And it could lead to endless tolling, so long as each new class action overlapped the previous one.

So Blake and Orkis's proposed exception would swallow *China Agritech*'s rule: a timely class action tolls its purported class members' individual claims, but never their class claims.

In so holding, we do not reach amendments to putative class definitions, substitution of proposed class representatives, or intervenors and objectors seeking to join a class action. *E.g.*, *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 298 (3d Cir. 2010) (allowing an objector to intervene under the relation-back doctrine). We also do not reach whether tolling applies to Blake and Orkis's claims for individual relief even though they were filed before *Samp* ended, as Blake and Orkis offer no reason for their individual claims to survive other than those we reject above. Our holding today is limited to *American Pipe* tolling and its inapplicability to successive class actions.

\* \* \* \* \*

Blake and Orkis are right that, under the Act, each discrete kickback separately triggers its own limitations period. That means their suit would have been timely in 2011. But the pendency of the *Samp* class action from 2011 to 2013 does not toll the time for filing a second class action. So their suit is untimely, and we will affirm.

19